Paul Wayne SMITH, Plaintiff,

v.

ALABAMA DEPARTMENT OF CORRECTIONS, an agency of the State of Alabama; Michael W. Haley, individually and in his official capacity as Commissioner of the Dept. of Corrections; and Roy Hightower, Individually and as Warden of Kilby Correctional Facility, Defendants.

No. 00–A–837–N.

United States District Court,
M.D. Alabama,
Northern Division.

June 27, 2001.

Jimmy L. DeBardeloben, Montgomery, AL, for plaintiff.

Andrew W. Redd, Kim T. Thomas, Montgomery, AL, for defendant.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

## I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by the Alabama Department of Corrections, Michael W. Haley ("Haley"), and Roy Hightower ("Hightower") (collectively "the Defendants") on April 17, 2001 (Doc. # 16).

The Plaintiff, Paul Wayne Smith ("Smith") filed a Complaint in this court on June 27, 2000. Smith brings claims of race discrimination under 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1981 (Count I), retaliation (Count II), denial of equal protection (Count IIII), and disability discrimination (Count IV).

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

## II. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movants:

Smith is a white employee who has been employed by the Department of Corrections since 1981. Haley is the Commis-

sioner of the Department of Corrections. Hightower was the Warden at Kilby Correctional Facility who denied Smith the position which forms the basis of the claims in this case.

This is not Smith's first lawsuit against the Department of Corrections. In 1997, Smith filed an EEOC charge and later a lawsuit, *Paul Wayne Smith et al. v. Alabama Department of Corrections*, 97–A–1053–N (*"Smith I "*), claiming, among other things, discrimination on the basis of race when he was transferred to another division against his will. The case ultimately went to trial in February of 1999 and on February 3, 1999, the jury found in favor of Smith and awarded him damages in the amount of $100,000.

On February 5, 1999, Smith filed a new Charge of Discrimination with the EEOC. The basis of this charge was that Smith had been denied a position which was awarded to a younger, black, female applicant. Smith characterizes this denial as a denial of a transfer.[1] The Complaint in the instant case was filed on June 27, 2000. Smith argues in his brief that he was denied the transfer on the basis of his race and disability and in retaliation for having filed the lawsuit in *Smith I.*

### III. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

1. The court relies on Smith's characterization of his claim as a denial of a transfer. Plain-

tiff's Brief in Opposition, pages 9, 10, 11.

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## IV. DISCUSSION

Smith has asserted several federal claims. Before the court addresses those individual claims, and the bases for summary judgment raised as to those claims, the court will first address the Defendants' argument that Smith's race discrimination and disability discrimination claims are barred by res judicata or, alternatively, issue preclusion.

### A. Defenses of Res Judicata and Issue Preclusion

■ Res judicata bars relitigation of matters decided in a prior proceeding if (1) the prior decision was rendered by a court of competent jurisdiction, (2) there was a final judgment on the merits, (3) the parties were identical in both suits, and (4) the prior and present causes of action are the same. *Jang v. United Technologies Corp.*, 206 F.3d 1147, 1149 (11th Cir.2000).

■ Smith does not challenge that the prior decision in *Smith I* was rendered by a court of competent jurisdiction, that there was a final judgment on the merits, or that the parties were identical. Instead, he argues that he could not have raised the claims he has asserted in the instant case in the former suit, and so res judicata should not bar his claims. Smith states that he interviewed for the position in question on August 19, 1998, and did not learn until after that date that he was not selected for the position. According to Smith, the Uniform Scheduling Order in

*Smith I* gave Smith until June 17, 1998 to amend his pleadings and to add parties. *See* Plaintiff's Exhibit 1. Smith also states that he did not receive his right-to-sue letter until March 29, 2000. Smith argues, therefore, that he could not have raised his claims stemming from the denial of this position during the pendency of *Smith I.*

■ It is clear that a plaintiff may not split his causes of action and then bring a claim of discrimination after another claim arising out of the same facts has proceeded to a judgment on the merits. *Jang*, 206 F.3d at 1149. Claims are only considered to be claims which could have been asserted during the pendency of the first law suit, however, if the factual basis for those claims existed at the time of the initial pleading in the case. *See Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1357 (11th Cir.1998). The Eleventh Circuit has decided the applicability of res judicata principles in a case in which the operative facts that gave rise to a plaintiff's claim had not occurred when the initial pleading was filed, but could have been raised during the pendency of the case. *See Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir.1992). The Eleventh Circuit explained that a judgment is conclusive regarding matters that the parties might have litigated, but not regarding new rights which were acquired and which might have been, but were not required to be, litigated. *Id.* at 1360. "[C]laims that 'could have been brought' are claims in existence at the time the original complaint is filed ...." *Id.* Accordingly, Smith's claims, the factual predicate of which arose after the initial complaint was filed in *Smith I,* are not barred. Furthermore, issue preclusion does not apply to the claims asserted in this case, even if testimony during the first trial touched on

the Defendants' actions at issue in this case, because the issues were not actually litigated. *See Pleming,* 142 F.3d at 1360. Smith's claims not being barred by res judicata or issue preclusion, therefore, the court will now turn to the merits of Smith's claims, and the remaining bases for summary judgment asserted by the Defendants as to those claims.

## B. Smith's Claims

### 1. Claims for Race Discrimination under Title VII, § 1981, and § 1983

Smith brings claims for discrimination on the basis of race under Title VII and 42 U.S.C. § 1981, and for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983. Before the court addresses the grounds for summary judgment as to the merits of those claims, the court will first address the grounds for summary judgment as to those claims which arise out of the capacities in which the Defendants have been sued.

■ Title VII claims may not be maintained against individuals. *See Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991); *Kelley v. Troy State University,* 923 F.Supp. 1494 (M.D.Ala.1996). Therefore, summary judgment is due to be GRANTED as to the individual Defendants on all Title VII claims asserted against them.

■ As to the § 1983 claim for violation of equal protection, the United States Supreme Court has held that "neither a State, nor its officials acting in their offi-

cial capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 65, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Furthermore, where a party attempts to sue a state in federal court, the Eleventh Amendment prohibits the federal court from exercising jurisdiction over the suit, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Neither one of these exceptions applies to Smith's § 1983 claims against the Department of Corrections. *See Quern,* 440 U.S. at 345, 99 S.Ct. 1139; *Free v. Granger,* 887 F.2d 1552, 1557 (11th Cir.1989). Accordingly, summary judgment is due to be GRANTED as to the § 1983 claims for damages as against the Department of Corrections.

Finally, the Eleventh Circuit has concluded that § 1981 can provide no greater remedy against a state actor than § 1983. *Busby,* 931 F.2d at 771–72 n. 6. Accordingly, the § 1981 claim asserted in this case merges into the § 1983 claim.

■ The court will now address the grounds for summary judgment which have been raised as to the merits of Smith's Title VII and § 1983 race discrimination claims. Both Title VII and the Equal Protection Clause require evidence of intentional discrimination on the basis of race, so the framework traditionally applied to Title VII claims also applies to a claim for violation of the Equal Protection Clause. *See Lee v. Conecuh County Bd. of Educ.,* 634 F.2d 959, 962 (5th Cir.1981).[2]

---

**2.** The Eleventh Circuit adopted as binding precedent all former Fifth Circuit cases decid-
ed prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of race by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff then has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *Combs*, 106 F.3d at 1534.

■ In this case, Smith has characterized his claim as a failure to transfer on the basis of race. To establish a prima facie case of failure to transfer, Smith must show that he: (1) is a member of a protected class, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) someone outside of the protected class was hired into the position. *Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000).

■ The Defendants argue that Smith has not suffered an adverse employment action.[3] The Defendants provide evidence to establish that the transfer for which Smith applied was to a job of the same rank, pay, and benefits as his present job, and constituted a request for a lateral transfer. *See* Affidavit of Mable Thomas.

■ An employment action must affect a term or condition of employment and is not adverse merely because the employee dislikes it or disagrees with it. *Perryman v. West*, 949 F.Supp. 815, 819 (M.D.Ala.1996). In making an evaluation of whether an action is an adverse employment action, courts are to apply an objective, not a subjective, test. *Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1448–49 (11th Cir.1998). For there to be an adverse employment action for purposes of a prima facie case of discrimination in employment, there must be a serious and material change in the terms, conditions, or privileges of employment. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir.2001). A purely lateral transfer, that is a transfer which does not involve a

---

3. The Defendants have also argued that Smith failed to exhaust his administrative remedies. The Defendants state that there is a grievance procedure in place and that, as in harassment cases, the existence of such a procedure should be a bar to Smith's claim. The Defendants have cited no authority for the proposition that the affirmative defense recognized in the context of harassment claims is to be extended to disparate treatment claims. *See Faragher v. Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The court declines to make such an extension of the affirmative defense in this case.

demotion in form or substance, does not rise to the level of an adverse employment action. *Dekalb Co.,* 145 F.3d at 1449. A transfer to a different position can be adverse if it involves reduction in pay, prestige, or responsibility. *Hinson,* 231 F.3d at 829. "The flip side of this coin would appear to be that a failure to transfer may constitute an adverse employment action if [the new position] entails an increase in pay, prestige or responsibility." *Morris v. Wallace Comm'y College,* 125 F.Supp.2d 1315, 1328 (S.D.Ala.2001).

In *Smith I,* the defendants presented evidence similar to the evidence presented by the Defendants in the instant case to establish that the plaintiff, Smith, had been laterally transferred. *See* Memorandum Opinion at page 8. In *Smith I,* this court applied the *Dekalb County* case which states that a transfer is adverse if it is a demotion in some respect, and found that Smith's affidavit and other evidence outlining the differences in the positions created a question of fact as to whether the transfer in *Smith I* was a purely lateral transfer, or was instead an adverse employment action. *See id.* at page 9.

Another judge in this district has addressed a claim analogous to the claims raised in the instant case in that a plaintiff applied for transfers to positions and was denied them. *See Rowlin v. Alabama Dep't of Pub. Safety,* 2001 WL 630581, No. 00–D–580–N (M.D.Ala. May 22, 2001)(De-Ment, J.). In *Rowlin,* the court analyzed the claim as a failure to transfer claim, and determined that a question of fact had been created as to whether there was an adverse employment action because there was evidence from which a jury could find that the positions for which the plaintiff applied were prestigious and held out the possibility of extra overtime and paid travel. *Id.* at * 8.

In the instant case, Smith has not argued that the position to which he sought to be transferred was a promotion. Significantly, he has further failed to point the court to any evidence which addresses any differences in pay, benefits, job duties, or responsibilities as between his current job and the job to which he sought to transfer. Smith's only evidence in this regard is an EEOC Investigative Memorandum which characterizes the denial of the transfer as an "adverse action." *See* Plaintiff's Exhibit 4.[4] In light of the Defendants' evidence that Smith's rank, pay, and benefits would remain the same, this evidence is not sufficient to create a question of fact as to whether the transfer would have entailed a serious and material change in his terms, conditions, or privileges of employment, so that the denial of the transfer would constitute an adverse employment action. The evidence to which the court has been pointed in this case establishes that the transfer sought, like the transfers in cases discussed in the *Dekalb County* opinion, was a purely lateral transfer.

**4.** Although not pointed to by Smith, the court notes that in the Conclusion of the EEOC report, the EEOC investigator referred to the employment action at issue as a denial of a promotion. While a denial of a promotion would certainly be an adverse employment action, there is no evidence before the court which indicates that the position Smith sought was a promotion. Smith himself, in his arguments to the court, characterizes the employment action as a failure to transfer.

The only evidence before the court as to the terms and conditions of the two positions is the Defendants' evidence that there was no difference in pay, rank, or classification. The court cannot conclude, therefore, that the conclusory statement by the EEOC investigator is sufficient to create a question of fact. *See Bennett v. Parker,* 898 F.2d 1530, 1534 (11th Cir.1990) (conclusory allegations do not defeat summary judgment).

The court recognizes that there is a factual difference between claims such as the claim in *Dekalb County* and *Smith I,* where a plaintiff is laterally transferred against his will, and the instant case in which Smith was denied a transfer for which he applied. Smith has not argued, however, that "adverse employment action" should be defined differently when there is a denied transfer instead of an involuntary transfer, and the court must conclude that such a difference would unnecessarily complicate employment discrimination law. *Cf. Dekalb Co.,* 145 F.3d at 1451 (applying Title VII cases in its analysis of an ADA claim and noting that the court did not want to create a difference in ADA analysis which would introduce unnecessary inconsistency and confusion into employment discrimination law). Furthermore, the factual difference between the claims in *Dekalb County* and *Smith I* does not require a different result as the Eleventh Circuit has stated that merely because a transfer is involuntary does not necessarily mean that it is adverse. *Id.* at 1454. While it logically may make sense to say that a denial of a transfer is an "adverse" action because it is not what the employee wished, such an action is no more "adverse," logically speaking, than a purely lateral transfer made against an employee's will, which the Eleventh Circuit has stated in *Dekalb County* does not necessarily rise to the level of an adverse employment action.

In light of Eleventh Circuit precedent, this court must conclude that whether the transfer was requested, or was required against the employee's will, the position to which the employee was transferred, or denied a transfer, must entail a serious and material change in the terms, conditions, or privileges of employment in order for a plaintiff to state a prima facie case of intentional discrimination. This court's conclusion is bolstered by decisions from other courts in analogous cases. For instance, analyzing a failure to transfer to a position sought by the employee under the traditional adverse employment action analysis is consistent with the approach taken by another judge in this district in the previously-discussed *Rowlin* case. *See Rowlin,* 2001 WL 630581 at *8 (analyzing transfer for which an employee applied under traditional adverse employment analysis). In addition, one court of appeals has adopted the approach of applying the same standards to both types of transfers. *See Brown v. Brody,* 199 F.3d 446 (D.C.Cir.1999)(agreeing with the argument that the same legal standards govern a claim for involuntary transfer and for a denial of a requested transfer); *but see Parker v. State of Delaware Dept. of Public Safety,* 11 F.Supp.2d 467, 477 & n. 9 (D.Del.1998)(stating that a denial of a request for a lateral transfer is adverse because it is a denial).

Because in this case, unlike in *Smith I,* Smith has pointed to no evidence that the position he sought would involve a serious and material change in the terms, conditions, or privileges of his employment, he has failed to create a question of fact as to whether the position he sought was anything other than a lateral transfer. Accordingly, Smith has not established a prima facie case of intentional discrimination on the basis of race, and summary judgment is due to be GRANTED on his Title VII race discrimination claim.

 In addition, "for a public employee to establish that an employment action has infringed a constitutional right the employee must also demonstrate that he or she has suffered some sort of adverse employment action." *Davis,* 245 F.3d at 1238

(11th Cir.2001); *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir.1994)(" 'Adverse employment action' is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands."). Therefore, summary judgment is also due to be GRANTED on the equal protection claim. *See Merriweather v. Alabama Dept. of Public Safety*, 17 F.Supp.2d 1260, 1270 (M.D.Ala.1998)(finding that failure to establish intentional discrimination in claims including a claim based on non-selection for training opportunities was fatal to Title VII and equal protection claims), *aff'd without opinion*, 199 F.3d 443 (11th Cir.1999).[5]

### 2. Retaliation Claim

Smith has also claimed that he was denied the transfer he sought in retaliation for his filing the earlier lawsuit in *Smith I*. A prima facie case of retaliation requires a showing (1) that the plaintiff engaged in a statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse employment action was casually related to the plaintiff's protected activities. *Little v. United Technologies, Carrier Transicold Division*, 103 F.3d 956, 959 (11th Cir.1997).

As earlier stated, the court has been pointed to affirmative evidence that the transfer contemplated by Smith would not have had any material impact on his rank, pay, or benefits. Smith has not provided any evidence to dispute this evidence, nor has he pointed the court to any evidence which would indicate what the relative re-

sponsibilities of the positions were. Instead, Smith has merely pointed to a statement by the EEOC which characterized the denial as an "adverse action." Smith has, therefore, failed to create a question of fact as to whether he suffered an adverse employment action. *See Merriweather*, 17 F.Supp.2d at 1274–76. Accordingly, the court finds that summary judgment is also due to be GRANTED as to the retaliation claim.

### 3. Claim of Discrimination on the Basis of Disability

The Defendants assert Eleventh Amendment immunity on behalf of the Department of Corrections for claims asserted under the American with Disabilities Act ("ADA"). Claims asserted under Title I of the ADA for money damages against state governments are barred by the Eleventh Amendment. *See Board of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Accordingly, summary judgment is due to be GRANTED as to all claims for damages asserted against the State under the ADA.

The Defendants have also moved for summary judgment on the merits of the ADA claim, arguing that, to the extent that Smith seeks prospective injunctive relief, he has failed to make out a prima facie case of discrimination under the ADA. In order to establish a prima facie case under the ADA, Smith must show that: (1) he has a disability; (2) he is a qualified individual, with or without some accommodation, despite his disability; and (3) he was suffered an adverse employment action be-

---

5. Having concluded that Smith has failed to meet his burden of establishing a prima facie case of intentional discrimination on the basis of race, the court need not address the qualified immunity defense to the Equal Protection claim raised by the individual defendants. The court notes, however, that Smith has conceded that Defendant Haley is due to be dismissed in his individual capacity. Plaintiff's Brief in Opposition, page 10.

cause of his disability. *See Dekalb County School Dist.*, 145 F.3d at 1445. A plaintiff can establish an ADA claim even if he does not have a disability, if he can establish that he was regarded as being disabled within the meaning of the ADA. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1327 (11th Cir.1998).

As earlier discussed, Smith has failed to provide any evidence which would tend to show that the denial of the lateral transfer was an adverse employment action. Summary judgment is, therefore, due to be GRANTED as to his claim for discrimination on the basis of disability.

In addition, the Defendants argue that while Smith has sought to establish a claim on the basis that he was regarded as having a disability because he had degenerative disc disease, Smith has failed to produce any evidence either that the decision makers knew of his condition, or that the decision makers perceived Smith as being substantially limited in a major life activity.

The Defendants have provided evidence from Smith's deposition wherein, when asked if he has evidence to suggest that Hightower had knowledge of his back injury, Smith responded, "I have no personal knowledge that he knew that I had a back problem on the day that I interviewed with him." Smith Deposition page 63. Smith also stated that he doubted that Haley knew that he had a back injury. *Id.* at 64.

Smith has not responded to the Defendants' Motion for Summary Judgment with regard to his disability claim, other than to restate the allegation of his Complaint that the "Defendants have the perception that his disability, which is back trouble, will not allow him to perform his duties as an Advanced Training Supervi-

sor." Brief in Opposition, page 7 (quoting Complaint at ¶ 26). In responding to a Motion for Summary Judgment, however, the non-movant must go beyond the allegations of the Complaint. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Because Smith has not adequately raised a question of fact as Defendants' knowledge of his back injury, he has failed to establish a prima facie case of discrimination under the ADA. Even if Smith in fact had evidence, consistent with the allegation of his Complaint, that the Defendants regarded him as being unable to perform the duties as an Advanced Training Supervisor, evidence that he was regarded as limited in his abilities to perform a particular job would be insufficient to establish a prima facie case of discrimination. *See Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 522, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999)("to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job."). Accordingly, summary judgment is due to be GRANTED as to the ADA claim on these alternative bases.

## V. CONCLUSION

For the reasons discussed, the Motion for Summary Judgment is due to be GRANTED.