Sallie K. MONTANYE, Plaintiff,

v.

**WISSAHICKON SCHOOL DISTRICT,**
**Wissahickon School District Board of**
**Directors and Stanley J. Durtan, Su-**
**perintendent of Schools, Defendants.**

No. Civ.A. 02–8537.

United States District Court,
E.D. Pennsylvania.

March 17, 2004.

Anita F. Alberts, Anita Alberts Assoc., Doylestown, PA, for Plaintiff.

Michael I. Levin, Stacy G. Smith, Levin Legal Group PC, Huntingdon Valley, PA, for Defendants.

## *MEMORANDUM*

DUBOIS, District Judge.

This case arises out of claims by plaintiff, Sallie K. Montanye, a special education teacher at Wissahickon High School (the "School"), against defendants Wissahickon School District (the "School District"), the Wissahickon School District Board of Directors (the "School Board") and defendant Stanley J. Durtan, School District Superintendent ("Superintendent Durtan") (collectively "the defendants"), under 42 U.S.C. § 1983, and Article I § 26 of the Pennsylvania Constitution. In her Third Amended Complaint plaintiff alleges, *inter alia*, that defendants deprived her of equal protection of law under the U.S. and Pennsylvania Constitutions for assisting a suicidal special education student, K.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint. For the reasons set forth below, Defendants' Motion to Dismiss is denied.

## I. FACTS

### A. Plaintiff's Involvement with K.

Plaintiff has been employed by the School District as a special education teacher since 1994 and was assigned to the School for the 2001–2002 school year. Complaint ¶ 2. K, a 14–year old in the ninth grade, was assigned to plaintiff's special education class in September 2001. *Id.* ¶ 10. K was on "homebound instruction" during the prior school year due to emotional and psychological problems and was hospitalized for a suicide attempt in July 2001. *Id.* K's problems continued throughout the 2001–2002 school year.

In January 2002, plaintiff's classroom aid gave her a note written by K. expressing sadness and suicidal thoughts and ending with the word "Help." *Id.* ¶ 12. Plaintiff showed the note to Robert Anderson, the School principal ("Principal Anderson"), who then forwarded the note to the School "WIN team." *Id.* WIN team is one of two School programs, the other being the "Special Assistance Program (SAP)," specifically designed to assist "at risk" students. *Id.* WIN team never contacted K or her mother about the suicide note. *Id.*

Plaintiff spoke with K's mother who feared K would harm herself. *Id.* ¶ 13. K's mother told plaintiff that she could not

control K's actions and that K had not been coming home at night. *Id.* K talked with plaintiff at school and, with K's mother's consent, plaintiff helped K find a new therapist. *Id.* In January 2002, K and her mother came to the School and "worked out a deal" with plaintiff. *Id.* ¶ 14. K agreed to tell her mother where she was going when she left the house and to return at an agreed time in exchange for some "emotional space." *Id.* However, during the night on which this arrangement was "worked out", K's mother called plaintiff and told her that K had left the house without permission and that K's mother feared she was with a former boyfriend who might expose her to illegal substances or physically abuse her. *Id.* Plaintiff told K's mother to call Principal Anderson. *Id.* ¶ 15. K's mother called and Principal Anderson and he told her to call the police. *Id.* Ultimately, the police brought K home. *Id.* K's mother wanted her to see the therapist plaintiff had identified but K only agreed to do so if plaintiff went with her and stayed with her during the session. *Id.*

K's mother gave permission for K to see the therapist, who was approved by the School District, and for plaintiff to accompany her. *Id.* ¶ 16. Plaintiff informed K's mother that she would "only go with K a few times" because K and the therapist "had to form their bond without plaintiff." *Id.* In February 2002, plaintiff offered to schedule K's sessions with her therapist in order to coordinate them with K's school schedule. *Id.* ¶ 17. For that first session, K told plaintiff the day she wanted to see the therapist and plaintiff scheduled the appointment for that day. *Id.*

Before K's first session, K's mother called plaintiff for directions to the therapist's office. *Id.* ¶ 18. Plaintiff offered to pick-up K and drive her to therapy, saving K's mother a trip across town. *Id.* K's mother gave permission for plaintiff to do

so. *Id.* Plaintiff drove K to the session and attended it with her as previously agreed upon. *Id.*

After this first session, Principal Anderson met with plaintiff and K's parents. *Id.* ¶ 19. K's parents were worried about K's erratic behavior and feared another suicide attempt. *Id.* K's parents sought advice about in-patient psychiatric placement for their daughter. *Id.* A few days later, K's mother called plaintiff and told her K left the house when instructed not to do so. *Id.* K was not in school. *Id.* ¶ 20. Plaintiff advised K's mother to speak with Principal Anderson. *Id.* K's mother came to school and met with Principal Anderson, Imelda Kormos, school nurse, Kathleen Metkowski, school counselor, and plaintiff. *Id.* The police picked up K and brought her to school. *Id.* ¶ 21. K was hysterical at being brought to school in a police car, restrained and handcuffed. *Id.* K was so distraught that her parents brought her to Montgomery County Emergency Services ("MCES") where she was admitted for psychiatric observation. *Id.* ¶ 22. That night plaintiff went to K's home to discuss with K's parents how to handle questions from other children about K's whereabouts-K did not want her classmates to know she was at a psychiatric treatment facility. *Id.* K was released from MCES on the condition that she attend three therapy sessions. *Id.* ¶ 23. K agreed to do so but again insisted that plaintiff accompany her. *Id.* Plaintiff reluctantly agreed to do so. *Id.* In March 2002, Principal Anderson instructed plaintiff not to attend any further sessions with K and plaintiff followed that instruction. *Id.* ¶ 24.

**B. Defendants' Actions**

In March 2002, Warren Sabia, K's math teacher, asked plaintiff if K's math class time could be switched for her English class time (when K was with plaintiff). *Id.* ¶ 24. K wanted to change classes because

she was being tormented by girls in her math class. *Id.* The switch was made by the two teachers but without the approval of the School Administration. *Id.* As a result, both Mr. Sabia and plaintiff were reprimanded. *Id.* ¶ 25. However, Mr. Sabia's reprimand was informal. *Id.* Plaintiff's was formal and blamed her for "encouraging" K's class cut and jeopardizing "the safety of the student and the school district." *Id.*

On March 19, 2002 an unsigned letter on behalf of the WIN team was sent to Principal Anderson stating, in pertinent part:

The [School] WIN team is concerned about the apparent inappropriate interaction between ... Mrs. Sallie Montanye, and students who have been identified as high risk through the SAP process. We find Mrs. Montanye's behavior to be an impediment to the SAP process and potentially damaging to these students.

Mrs. Montanye is frequently observed outside the high school building speaking individually with these students ... Our concern is that Mrs. Montanye is unqualified to work with a student in a therapeutic way and is therefore jeopardizing the health and welfare of these children ... Mrs. Montanye has taken one of her students to three therapy sessions outside of the school setting ... The parents gave her permission to drive their child to therapy and introduce her to the therapist, but Mrs. Montanye also attended the sessions with the child ... [T]he parents have met with you and Mrs. Kormos. They fear that their child is so enmeshed with Mrs. Montanye [and] that there could be serious negative effects.

As the high school WIN team, we are most concerned about these behaviors and the continued lack of judgment and professionalism Mrs. Montanye displays with students at-risk. We would ask you to take action before these situations become more out-of-control and the school district suffers serious repercussions.

*Id.* ¶ 26. This letter was also sent to Judith Clark ("Clark"), the School District Assistant Superintendent. *Id.* Principal Anderson responded to the WIN team letter by memorandum dated March 22, 2002, stating that he was aware of the situation and had taken appropriate steps. Id. ¶ 27.

On March 19, 2002, the day the WIN team letter was sent, WSD's Code of Pupil Discipline was presented to the School Board, providing, inter alia, that pupils must "recognize that the school staff assumes the role of a surrogate parent in matters of behavior and discipline from time of departure from home until arrival at home ..." and urges parents and guardians of pupils to "build good working relationships between themselves, their children, and school district employees." *Id.* Plaintiff believed her conduct was appropriate under this policy. *Id.* ¶ 28.

On May 1, 2002, Superintendent Durtan sent plaintiff notice of a *Loudermill* hearing (the *"Loudermill* notice"), pursuant to the due process requirements of *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), setting forth allegations of improper conduct with K. *Id.* The *Loudermill* notice stated, in relevant part:

Allegations have been made that you engaged in willful neglect of duty, insubordination, incompetency, persistent negligence in the performance of duties, willful violation or [sic] school laws, and improper conduct growing out of the following: improperly involving yourself in situations pertaining to student K, making an appointment for the student with a therapist, transporting the student to the therapist, participating in the therapy session with the student, and participating in the change in schedule

of the student without the prior approval of the administration. It is alleged that these actions by you are unprofessional and exhibit poor judgment, that they are in violation of the rules pertaining to the procedures that are required to be followed for evaluations of students, that they are in conflict with the resources established by the school district for helping students and for scheduling students.

*Id.* ¶ 30. According to plaintiff, Superintendent Durtan did not investigate the charges he made against plaintiff prior to issuing the notice. *Id.* ¶ 32.

The *Loudermill* hearing took place on May 23, 2002. *Id.* ¶ 31. Principal Anderson testified at the hearing that plaintiff "was not insubordinate, but obeyed his instructions, kept him informed and involved in matters concerning K, and K's parents consented to plaintiff driving K to therapy and attending the initial session." *Id.* According to plaintiff, no evidence was presented at the hearing to support the allegations against her. *Id.* Plaintiff believes that Superintendent Durtan initiated the *Loudermill* hearing to intimidate her and to make her resign. *Id.* ¶ 32. According to plaintiff, after the hearing Principal Anderson was "told to find other employment and leave the district" because of "his truthful testimony supporting plaintiff's conduct." *Id.* ¶ 33.

Plaintiff's teaching performance for the 2001–2002 school year was evaluated on May 29, 2002, several days after the *Loudermill* hearing. *Id.* ¶ 34. The evaluation was conducted by Assistant Principal Jeffrey Madden who was aware of the WIN team letter and the *Loudermill* hearing of May 23, 2002. *Id.* Assistant Principal Madden "also knew that [Principal] Anderson was leaving the [School] District because he testified for plaintiff [at that hearing]." *Id.* Plaintiff's performance for the 2001–2002 school year was rated

"Good," down from "Very Good" for the 2000–2001 school year. *Id.* Plaintiff believes Assistant Principal Madden was told to "mark her down." *Id.*

According to the Third Amended Complaint, at the same time Assistant Principal Madden marked down another female special education teacher from her "Outstanding" rating of 2001 to a "Very Good" rating. Complaint ¶ 36. Plaintiff alleges this action was taken because the other teacher advocated for special education students and questioned WSD policy to decrease special education services. *Id.* This teacher was placed on a "Professional Improvement Plan" in the fall 2002 semester despite her "Very Good Rating," harassed during the school year and was ultimately re-assigned to an elementary school to teach 6th grade, a position for which she lacked any experience. *Id.* ¶¶ 37–39. Thereafter, this teacher resigned and sought employment with another school district. *Id.*

On June 3, 2002, Superintendent Durtan issued a "Notice of Directives," ("the directives letter") to plaintiff instructing her to maintain, *inter alia,* a proper relationship with students in accordance with the School District's policies and procedures. *Id.* ¶ 41. The directives letter stated that plaintiff was guilty of "significant wrongdoing" and would have been formally discharged except for Principal Anderson's support. *Id.* It also set forth conditions of employment with which plaintiff was required to comply, conditions which plaintiff contends, "no teacher can meet." *Id.* ¶ 68.

Plaintiff continues to be employed by the School District but has been on medical leave since September 2002 for severe stress, anxiety, and depression allegedly stemming from the Notice of Directives. *Id.* ¶ 44. Plaintiff believes that she will be immediately discharged if she returns to work under the terms of the directives letter. *Id.* ¶ 42.

Plaintiff filed a two-count Third Amended Complaint on September 26, 2003. That complaint was purportedly filed pursuant to the Court's Memorandum and Order of August 11, 2003 in which plaintiff's Amended Complaint was dismissed with leave to file a third amended complaint asserting two claims. The Court's Memorandum stated:

[As to a claim under the Fourteenth Amendment to the U.S. Constitution,] Notwithstanding the Court's dismissal of plaintiff's § 1983 claim as set forth in the Amended Complaint, her allegations, albeit abbreviated, about the School District and School Board's policy against special education might be sufficient to state an equal protection claim under the Fourteenth Amendment. The Court will thus give plaintiff leave to amend her complaint to assert a § 1983 claim against the School District and School Board alleging an equal protection violation if warranted by the facts and applicable law.

\* \* \* \* \* \*

[As to a claim under Article I § 26 of the Pennsylvania Constitution (Pennsylvania's equal protection clause) ] [P]laintiff does not allege membership in a protected class, nor can she. Thus, although not expressly stated in the Amended Complaint, the Court assumes plaintiffs attempting to assert an equal protection claim as a "class of one." A "class of one" claim might be sufficient to withstand a motion to dismiss if, for example, a plaintiff were to allege that she had been intentionally treated differently from other persons "similarly situated"—with no rational basis for that different treatment. However, the Amended Complaint contains no such allegation and her Article I § 26 claim must be dismissed. Notwithstanding that deficiency in plaintiff's Amended Complaint, the Court will grant plaintiff leave to file a second amended complaint to assert a Section 26 equal protection claim if warranted by the facts and applicable law.

In Count One of the Third Amended Complaint, plaintiff claims that the School District, School Board, and Superintendent Durtan violated 42 U.S.C. § 1983. Specifically, she alleges that defendants deprived her of equal protection of law by subjecting her to a termination proceeding at which no evidence was presented in support of the charges against her and by constructively discharging her when she failed to resign. *Id.* ¶ 31–32.

In further support of her § 1983 claim, plaintiff alleges that she is one of four special education employees targeted in the School District and School Board's "campaign against Special Education" in the spring of 2002. *Id.* ¶ 40. According to plaintiff, a second special education teacher was initially charged with poor use of his time, but after his Individualized Education Program ("IEP") files were examined, the charge was changed to "infractions in preparation of IEP's." *Id.* ¶ 49. A *Loudermill* hearing was held in the summer of 2002 to address that charge and the teacher thereafter resigned. The third individual, a teacher's aid, resigned without a hearing in 2002, as did the fourth "targeted" individual, the female teacher who resigned in 2003 after having been "marked down" by Assistant Principal Madden, as described above. *Id.* ¶¶ 36–39. Plaintiff claims that the "mark down" of her evaluation and the "malicious" June 3, 2002 Notice of Directives was part of this official, yet unwritten, policy of "curtailing services to at risk children, persecuting special education teachers and students, and denying 'special ed[ucation]' children the attention and help they need." *Id.* ¶ 57.

In Count Two, plaintiff claims that the School District violated Article I § 26 of the Constitution of the Commonwealth of

Pennsylvania, the Commonwealth's equivalent of the U.S. Constitution's equal protection clause. Count Two is based on the same factual allegations as Count One.

Defendants filed a Motion to Dismiss the Third Amended Complaint on October 10, 2003. The Motion to Dismiss will be denied for the reasons that follow.

## II. LEGAL ANALYSIS

Rule 12(b)(6) of the federal rules of civil procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). Only those facts alleged in the complaint may be considered in deciding such a motion. *See ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994). A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Therefore, the facts alleged in plaintiff's Third Amended Complaint are accepted as true in deciding this motion.

### A. Count One—Plaintiff's Claim Under 42 U.S.C. § 1983 Against the School District, the School Board and Superintendent Durtan

#### 1. Failure to State an Equal Protection Claim Under the Fourteenth Amendment to the United States Constitution

##### a. Failure to Allege Membership in a Protected Class

■ Defendants argue that the Court should dismiss plaintiff's equal protection claim because plaintiff does not identify the protected class to which she belongs. Mot. of Wissahickon School Dist. et al., To Dismiss Pl.s Third Amended Compl. at 9–13. The Court ruled on this issue as follows in its Memorandum of August 11, 2003:

> If plaintiff does not allege membership in a protected class, she can nonetheless bring an equal protection claim as a "class of one" if she "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam); *see also Harlen Assoc. v. Inc. Village of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) (stating that equal protection claims extend to "class of one" claims—claims of "individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials") (citing *Olech,* 528 U.S. at 564, 120 S.Ct. 1073).

As the language of the Court's Memorandum clearly states, plaintiff need not allege membership in a protected class. Therefore, the Court will not dismiss Count One of plaintiff's Third Amended Complaint on that ground.

#### b. Failure to Properly Re–Plead

Defendants argue that the Court should dismiss the Third Amended Complaint because plaintiff failed to properly re-plead her cause of action as directed by the Court. Mot. of Wissahickon School Dist. et al., To Dismiss Pl.s Third Amended Compl. at 13–15; Def.'s Reply To Pl.'s Ans. Opp. Mot. To Dis. Third Amended Compl. at 2–4. In support of their conten-

tion, defendants cite Plaintiff's Answer to Defendants' Motion to Dismiss where plaintiff stated that she is not alleging that she is a class of one and where she made arguments concerning her membership in a suspect class. Mot. of Wissahickon School Dist. et al., To Dismiss Pl.s Third Amended Compl. at 2–10.

Plaintiff misunderstands the "class of one" doctrine. Plaintiff appears to have erroneously concluded that she cannot assert her claim as a "class of one" because other teachers were affected by the School District and School Board's "campaign against Special Education" in the spring of 2002.

A plaintiff who does not allege membership in a protected class, can nonetheless assert an equal protection claim as a "class of one" if she "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam); *see also Harlen Assoc. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir.2001) (stating that equal protection claims extend to "class of one" claims—claims of "individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials") (citing *Olech*, 528 U.S. at 564, 120 S.Ct. 1073). As the Supreme Court commented in *Olech*, "[w]hether the complaint alleges a class of one or a class of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis." 528 U.S. at 564 n. 1, 120 S.Ct. 1073.

As this Court explained in its Memorandum of August 11, 2003, plaintiff does not allege membership in a protected class, nor can she. Since plaintiff claims she was treated differently from others similarly situated and that there is no rational basis for the difference in treatment, plaintiff is therefore asserting a class of one claim. The Court in is Memorandum of August 11, 2003, granted plaintiff leave to file a third amended complaint asserting such a claim. Therefore, the Court will not dismiss Count One of plaintiff's Third Amended Complaint for failure to properly re-plead.

### c. Failure to Allege Sufficient Facts to Proceed as a "Class of One"

Defendants argue that plaintiff's claim should be dismissed for failing to allege facts that satisfy the two-prong requirement for a "class of one" equal protection claim. Mot. of Wissahickon School Dist. et al., To Dismiss Pl.s Third Amended Compl. at 13–15. The defendants argue that plaintiff has failed to allege sufficient facts under both prongs and the Court will address those arguments separately below.

■ This Court and all other courts in this circuit have uniformly held that to proceed on a "class of one" theory in an equal protection claim, a plaintiff must allege sufficient facts demonstrating that: (1) defendants, acting under color of state law, intentionally treated plaintiff differently from others similarly situated and that (2) there is no rational basis for the difference in treatment. *Garrison v. Yeadon*, 2003 WL 21282115, *5 (E.D.Pa.2003); *Development Group, LLC v. Franklin Township Board of Supervisors*, 2003 WL 22358440, *6 (E.D.Pa.2003); *Reinsmith v. Borough of Bernville*, 2003 WL 22999211, *8 (E.D.Pa.2003); *Demeter v. Buskirk*, 2003 WL 22416082, *5 (E.D.Pa.2003); *Marchese v. Umstead*, 110 F.Supp.2d 361, 371 (E.D.Pa.2000); *Keating v. Bucks County Water & Sewer Authority*, 2000 WL 1888770, *6 (E.D.Pa.2000); *American Fabricare v. Township of Falls*, 101 F.Supp.2d 301, 309 n. 14 (E.D.Pa.2000);

*Cinaglia v. Levin,* 258 F.Supp.2d 390, 394–395 (D.N.J.2003); *Little v. Terhune,* 200 F.Supp.2d 445, 450 (D.N.J.2002); *Adams Parking Garage v. City of Scranton,* 171 F.Supp.2d 417, 426 (M.D.Pa.2001).

### (1) Failure to Allege Treatment Different From Others Similarly Situated

 As to the first requirement of the two-part rule, defendants argue that plaintiff has failed to allege that she was treated differently than others similarly situated. Mot. of Wissahickon School Dist. et al. To Dismiss Pl.'s Third Amended Compl. at 11. Specifically, defendants argue that there is not a single allegation in the Third Amended Complaint that any other teacher who:

> (1) counseled a student and her family, although not a guidance counselor or school psychologist; (2) concerning rules at home; (3) recommended a psychologist for the student; (4) made appointments with the psychologist for the student; (5) transported the student to her scheduled sessions with the psychologist in her own vehicle; (6) attended the sessions with the student and the psychologist; and (7) visited and counseled the student while she was a patient at a mental health facility,

was subject to treatment different from that which plaintiff received, that is, notice to appear at a Loudermill hearing and a written directive advising her why the actions detailed were inappropriate to her position as a special education teacher and instructed her to refrain from these actions in the future. *Id.* at 11, 14–15.

 Defendants misunderstand the relevant legal standard. Plaintiff need not allege she was treated differently than others *identically* situated but rather that she was treated differently from others *similarly* situated. *Olech,* 528 U.S. at 565, 120 S.Ct. 1073. To the contrary, the proscrip-

tion of the equal protection clause against differential treatment applies where individuals are *similarly* situated. *Eisenstadt v. Baird,* 405 U.S. 438, 446–47, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

Plaintiff has alleged she was intentionally treated differently from other teachers in the School District. Complaint ¶¶ 51, 66–68, 70. To support this contention, plaintiff alleges the following facts. First, that School District and the School Board failed to adopt policies for special education teachers and arbitrarily applied stricter standards of conduct to plaintiff and other special education teachers than to other teachers. *Id.* ¶ 51. Second, she was the first teacher in the School District to be subjected to a Loudermill hearing, *Id.* ¶¶ 56, 66. Third, she was the first teacher in the School District to be subjected to a disciplinary "directives" letter, *Id.* ¶¶ 55, 68. Fourth, plaintiff was disciplined in a more formal and harsh way than another teacher for engaging in identical behavior. *Id.* ¶ 24–25.

 Applying the relevant legal standard discussed above, the Court concludes that plaintiff is correct and that the relevant group of "others similarly situated" are teachers in the School District. The series of "firsts" that plaintiff alleges (first to be subject to a Loudermill hearing, first to receive a directives letter) satisfies the first prong of the two-prong requirement to state a class of one equal protection violation claim. Plaintiff further alleges that she was treated differently than (1) other teachers because she was a special education teacher, *Id.* ¶¶ 51, 66–68, 70, and (2) other special education teachers who engaged in identical conduct, *Id.* ¶ 24–25. The Court concludes that these allegations satisfy plaintiff's burden to allege that she was intentionally treated differently from others similarly situated. Therefore, the Court will not dismiss Count One of plain-

tiff's Third Amended Complaint on this ground.

### (2) Failure to Allege Defendants' Actions were Not Rationally Related to a Legitimate Government Interest

■ As to the second prong of the class of one rule, defendants argue that plaintiff's complaint should be dismissed because she fails to allege that the directives letter issued by Superintendent Durtan was not rationally related to a legitimate government interest. However, separate and apart from the directives letter, plaintiff's complaint alleges conduct by defendants that plaintiff argues was "arbitrary and wholly irrational." Those allegations are sufficient to withstand a motion to dismiss.

Under the "rational basis" standard, courts "presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). That presumption will not be set aside if any state of facts reasonably may be conceived to justify it. *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). However, as the *Wroblewski* court explained:

The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.

*Wroblewski v. City of Washburn,* 965 F.2d 452, 460 (7th Cir.1991).[1]

To survive a motion for summary judgment and ultimately to prevail at trial, plaintiff will have to offer an ascending quantum of proof that defendants' actions were not rationally related to a legitimate government purpose. At this stage, however, plaintiff need only allege that the defendants actions were not rationally related to a legitimate government purpose and plead sufficient facts to support that contention. *See e.g., Marchese v. Umstead,* 110 F.Supp.2d 361, 371 (E.D.Pa. 2000).

Plaintiff alleges that the policies and practices directed against her, as a special education teacher, are "arbitrary and unreasonable, and have no substantial relationship to the public health, safety, morality or general welfare." Complaint ¶ 71. In support of this contention plaintiff alleges the following facts. First, the School District "intentionally lacks written po-

1. The *Wroblewski* court described the interaction of the rational basis standard with Rule 12(b)(6) as a "perplexing situation." *Wroblewski v. City of Washburn,* 965 F.2d 452, 460 (7th Cir.1992). Evidence of this perplexity comes from the *Olech* case itself. From the face of the complaint the trial judge in *Olech* found that the extra easement was required for the legitimate public purpose of building a paved roadway, sidewalk and public utilities. Having found a rational basis for the Village's actions, the district court dismissed plaintiff's suit. Neither the Seventh Circuit nor the U.S. Supreme Court disagreed with the district court's finding of rational basis-neither court even addressed it. However, both courts found an equal protection violation. Thus, as one commentator has described it, "*Olech,* if anything, liberalized the pleading standards, throwing into question the issue of whether a case can be dismissed at the 12(b)(6) stage merely on the finding of a rational basis." Shaun M. Gehan, *With Malice Toward One: Malice and the Substantive Law in "Class of One" Equal Protection Claims in the Wake of Village of Willowbrook v. Olech,* 54 Me.L.Rev. 329, 363, 385 (2002).

lic[ies] for conduct of (special education) teachers to allow arbitrary application of unwritten policies" and that "at all times relevant to this action, WSD maintained and enforced an unwritten policy to cut services to special ed[ucation] pupils and to punish and intimidate teachers who advocated for them." *Id.* ¶¶ 43, 8. Second, the School Board "unlawfully authorized Superintendent Durtan to harass and persecute certain Special Ed[ucation] teachers, plaintiff in particular, in retaliation for supporting and advocating on behalf of 'at-risk' students, to further its discriminatory policy against special Ed[ucation] laws and programs." *Id.* ¶¶ 50–51. Third, the defendants presented no evidence to support the charges made in the May 1, 2002 letter that notified plaintiff of the *Loudermill* hearing at the *Loudermill* hearing. *Id.* ¶ 31. Fourth, Superintendent Durtan issued a "directives letter" accusing plaintiff of significant wrongdoing without identifying any wrongdoing. *Id.* ¶ 55. Fifth, plaintiff was improperly "marked down" in the performance evaluation that followed her *Loudermill* hearing. *Id.* ¶¶ 34–36, 54–55. Sixth, in July 2002, the district's teachers' union initiated a grievance proceeding on behalf of plaintiff but the School District has "blocked the grievance by refusing to provide any documents to the union." *Id.* ¶ 45. Seventh, in August 2002, plaintiff was contacted for a potential job with a vocational school, but after Superintendent Durtan was contacted, the potential employer discouraged her and did not schedule an interview. *Id.* ¶ 44.

The Court concludes that the above allegations satisfy plaintiff's burden to plead that there is no rational basis for the difference in treatment plaintiff received. "Punishing and intimidating" special education teachers in order to reduce the special education services is not a legitimate government purpose. Moreover, the kind of retaliatory actions plaintiff alleges occurred, "marking down" her performance

rating, blocking her union grievance, undermining her attempts to seek alternative employment, if proven, may establish irrational government action. *See Olech,* 528 U.S. at 565–566, 120 S.Ct. 1073 (Breyer, J, concurring); *see also, Hilton v. City of Wheeling,* 209 F.3d 1005 (7th Cir.2000); *see also, Esmail v. Macrane,* 53 F.3d 176 (7th Cir.1995). Therefore, the Court will not dismiss Count One of plaintiff's Third Amended Complaint on this ground.

### d. Failure to Allege Adverse Employment Action

Defendants argue that in addition to the two requirements outlined above, "[f]or a public employee to establish that an employment action has infringed a constitutional right, the employee also must demonstrate that he or she has suffered some sort of adverse employment action." Mot. of Wissahickon School Dist. et al. To Dismiss Pl.'s Third Amended Compl. at 19–20. In support of this argument defendants cite cases from the Eleventh Circuit. *Smith v. Alabama Department of Corrections,* 145 F.Supp.2d 1291 (M.D.Ala.2001) *citing, Davis v. Town of Lake Park* 245 F.3d 1232 (11th Cir.2001); *McCabe v. Sharrett,* 12 F.3d 1558, 1563 (11th Cir. 1992). *Smith* involved a claim under Title VII of the Civil Rights Act of 1964 ("Tile VII") and an equal protection claim. *Smith,* 145 F.Supp.2d at 1296. *Davis* involved only a Title VII claim. *Davis,* 245 F.3d at 1234. The *Smith* court cited *Davis* for the rule that to bring a Title VII claim the plaintiff must establish an "adverse employment action." *Smith,* 145 F.Supp.2d at 1300. The *Smith* court also, applied the Eleventh Circuit rule to plaintiff's equal protection claim.

Relying on *Smith,* defendants urge the Court to require an adverse employment action in this equal protection case. The Court declines to do so. First, the Elev-

enth Circuit, in a case decided after *Smith, Shotz v. City of Plantation,* 344 F.3d 1161 (11th Cir.2003), ruled that "our holing in *Davis,* was explicitly predicated on Title VII's statutory language." *Id.* at 1182. Given the Eleventh Circuit's clarification of its earlier ruling in *Davis,* there is no authority in that circuit, the only authority cited by defendants, for the argument that the adverse employment action requirement should be applied to equal protection cases.

■ Further, the Third Circuit has never held that an adverse employment action is required to state an equal protection claim. The Third Circuit, like the Eleventh Circuit, only requires such a showing in a Title VII case. *See, e.g., Martin v. Enterprise Rent–a–Car,* 2003 WL 187432 (E.D.Pa.2003); *Poli v. SEPTA,* 1998 WL 405052 (E.D.Pa.1998). Therefore, the Court will not dismiss Count One of plaintiff's Third Amended Complaint on this ground.

### 3. Failure to Plead Sufficient Facts to Assert a Claim Under 42 U.S.C. § 1983 Against the School District and School Board

Defendants argue that the Court should dismiss plaintiff's 42 U.S.C. § 1983 claim against the School District and the School Board. Mot. of Wissahickon School Dist. et al. To Dismiss Pl.'s Third Amended Compl. at 23–27. Specifically, defendants argue that plaintiff has not adequately plead that "any policy, practice or custom of the School District of School Board was the moving force behind any alleged violation of equal protection." *Id.*

■ Under *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality may only be held liable under 42 U.S.C. § 1983 where the municipality itself—through an approved municipal policy or governmental custom—causes a constitutional violation; municipal liability cannot be based on *respondeat superior,* liability imposed solely by reason of an employment relationship.[2] *See id.,* at 690–691, 694–695, 98 S.Ct. 2018; *Baker v. Monroe Twp.,* 50 F.3d 1186, 1191 (3d Cir.1995). To establish § 1983 liability against a municipal body under *Monell,* the plaintiff must show: (1) the enforcement of a municipal policy that was (2) the "moving force" of the violation of plaintiff's federally protected rights. *See Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).

■ In this case, plaintiff alleges that her right to equal protection of law was violated by the School District and School Board's campaign against special education and special education teachers. Complaint ¶ 69. Plaintiff contends that both the School District and School Board failed to adopt policies for special education teachers and arbitrarily applied stricter standards of conduct to plaintiff and other special education teachers as compared with other teachers. *Id.* ¶¶ 43,

---

**2.** *Monell* held that:

"[L]ocal government bodies ... can be sued directly under § 1983 for monetary, declaratory or injunctive relief [only] where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."

*Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018,

56 L.Ed.2d 611 (1978). The Monell court continued:

"[I]t is when execution of a government's policy or caution, whether made by its lawmakers, or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."

*Id.* at 694, 98 S.Ct. 2018.

51. As to the School District, plaintiff alleges it maintained and enforced an unwritten policy to cut services to special education pupils and to punish and intimidate special education teachers who advocated for them. *Id.* ¶ 8. On this issue plaintiff also alleges that in July 2002, the district's teachers union initiated a grievance proceeding on behalf of plaintiff and "WSD has blocked the grievance by refusing to provide any documents to the union." *Id.* ¶ 45. As to the School Board, plaintiff alleges that it "unlawfully authorized Superintendent Durtan to harass and persecute certain Special Education teachers, Plaintiff in particular, in retaliation for supporting and advocating on behalf of 'at-risk' students, to further its discriminatory policy against special Education laws and programs." *Id.* ¶ 50–51. The Court concludes that their allegations satisfy plaintiff's burden to allege sufficient facts of a government policy adopted by the School District and School Board. Therefore, the Court will not dismiss Count One of plaintiff's Third Amended Complaint on this ground.

### 4. Qualified Immunity for Superintendent Durtan

Defendants argue that Superintendent Durtan is entitled to qualified immunity and that plaintiff's claims against him should be dismissed on this ground. Mot. of Def. Wissahickon School Dist. et al to Dismiss Pl.'s Third Amended Complaint at 27. Under the qualified immunity doctrine, "[o]fficials exercising discretionary powers are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *D.R., v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1368 (3d Cir.1992) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "When a defendant asserts the affirmative defense of qualified immunity, however, the court must determinate as a threshold matter whether the defendant is entitled to that defense." *D.R.,* 972 F.2d at 1367–68 (citing *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727).

In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court ruled that district courts should address qualified immunity "at the earliest possible stage in litigation." *Id.* at 2156. The Court further stated that the requisites of a qualified immunity defense must be considered in proper sequence. *Id.* at 2155. First, courts must address the following "threshold" question: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 2156. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties submissions, the next sequential step is to ask whether the right was clearly established." *Id.*

Defendants argue in that Superintendent Durtan is entitled to qualified immunity because plaintiff has failed to establish the violation of a constitutional right. The Court concludes otherwise. As stated in this Memorandum, the Court determines plaintiff has alleged a violation of her constitutional rights. Moreover, defendants have not addressed the question whether the constitutional rights alleged were clearly established at the time of the claimed violation. Accordingly, the Court will not address the second sequential question in the qualified immunity analysis at this stage in the litigation and the Court will not dismiss plaintiff's claims on this ground.

**5. The School Board and the School District as Parties**

██ Defendants argue that it is "inappropriate" for the plaintiff to sue both the School Board and the School District. Mot. of Def. Wissahickon School Dist. et al to Dismiss Pl.'s Third Amended Complaint at 36–38. Specifically, defendants argue that plaintiff's claim against the School Board as an entity are indistinct from her allegations against the School District itself. *Id.*

██ A review of the facts alleged in the Third Amended Complaint reveals this is not so. As described above in section II.A.3, plaintiff alleges that the School District, "maintained and enforced an unwritten policy to cut services to special education pupils and to punish and intimidate special education teachers who advocated for them," Complaint ¶ 8, and that the School Board, "unlawfully authorized Superintendent Durtan to harass and persecute certain Special Education teachers, Plaintiff in particular, in retaliation for supporting and advocating on behalf of 'at-risk' students, to further its discriminatory policy against special Education laws and programs," *Id.* ¶ 50–51. Moreover, "a Rule 12(b)(6) motion does not address the redundancy of claims; it questions only their validity." *Coffman v. Wilson Police Department,* 739 F.Supp. 257, 261–262 (E.D.Pa.1990).

**B. Count Two—Plaintiff's Claims Under the Pennsylvania Constitution Against the School District**

**1. Failure to State a Claim**

██ Defendants argue that the Court should dismiss plaintiff's claims under Article I § 26 of the Pennsylvania Constitution. Mot. of Def. Wissahickon School Dist. et al to Dismiss Pl.'s Third Amended Complaint at 30–32. Article I § 26 of the Pennsylvania Constitution provides:

Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right. PA. CONST. art. I, § 26. Section 26 is "designed to protect Commonwealth citizens from being harassed or punished for the exercise of their constitutional rights." *Bronson v. Lechward,* 155 Pa.Cmwlth. 206, 624 A.2d 799, 801 (1993). Section 26 is known as the state's equal protection provision and is "analyzed under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment." *Small v. Horn,* 554 Pa. 600, 722 A.2d 664, 672 n. 13 (1998) (citing *Love v. Borough of Stroudsburg,* 528 Pa. 320, 597 A.2d 1137, 1139 (1991)); *see also Kaehly v. City of Pittsburgh,* 988 F.Supp. 888, 893 n. 5 (W.D.Pa.1997) (stating same).

Defendants argue that plaintiff's claim should be dismissed for the same reasons that her § 1983 equal protection claim should be dismissed. Mot. of Def. Wissahickon School Dist. et al to Dismiss Pl.'s Third Amended Complaint at 30–31. For the reasons outlined above, the Court concludes plaintiff has plead sufficient facts to meet her burden at this stage of the litigation. Therefore, the Court will not dismiss Count Two of plaintiff's Third Amended Complaint on this ground.

**2. Immunity under Pennsylvania's Political Subdivisions Tort Claims Act**

██ Defendant's argue that plaintiff's claim should be dismissed because the School District enjoys immunity under the Pennsylvania Political Subdivisions Tort Claims Act. Mot. of Def. Wissahickon School Dist. et al to Dismiss Pl.'s Third Amended Complaint at 32–34. Defendants argue that "as a general rule and with

limited exceptions, municipalities and municipal agencies, such as the School District, are immune from tort liability." *Id.*

The Political Subdivision Tort Claims Act (the "Tort Claims Act") grants to municipal agencies immunity from liability for all state law tort claims. *See* 42 PA. CONS. STAT. ANN. § 8541 *et. seq.*; *Smith,* 112 F.Supp.2d at 424; *Martin v. City of Philadelphia, et al.,* No. 99–543, 2000 WL 1052150, at *13 (E.D.Pa. July 24, 2000). The Tort Claims Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. CONS.STAT. ANN. § 8541.

Defendants are correct in their assertions that in Pennsylvania, municipal agencies enjoy immunity from tort liability with limited exception. However, "[a]s the title of the statute indicates, the immunity granted covers only torts (and at that, only claims sounding in negligence)." *Coffman v. Wilson Police Department,* 739 F.Supp. 257, 266 (E.D.Pa.1990); *see also, e.g., Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118, 1120 (1987). "Claims arising from violations of the Pennsylvania Constitution may still be raised against local governments." *Id.; see e.g., Redevelopment Auth. v. Woodring,* 498 Pa. 180, 445 A.2d 724, 726 (1982) (takings; Pa. Const. Art. I, § 10); *Thelin v. Borough of Warren,* 118 Pa.Cmwlth. 336, 544 A.2d 1135, 1136 (1988) (impairment of contract; Pa. Const. Art. I, § 17); *Williams v. City of Pittsburgh,* 109 Pa.Cmwlth. 168, 531 A.2d 42, 47 (1987) (equal protection; Pa. Const. Art. I, § 1) *appeal denied,* 518 Pa. 622, 541 A.2d 748 (1988); *Holland Enters., Inc. v. Joka,* 64 Pa.Cmwlth. 129, 439 A.2d 876, 881 (1982) (due process; Pa. Const. Art. I § 1). As the Court reasoned in *Coffman,* "[t]his result is logical; it would be peculiar if the legislature could abrogate the rights protected by the Constitution." *Coffman,* 739 F.Supp. at 266; *contra, Agresta,* 797 F.Supp. at 409 (general tort immunity applied to claims for money damages against city for violations of the Pennsylvania constitution).

The Political Subdivision Tort Claims Act applies to tort claims, not constitutional claims. Thus, the Court will not dismiss plaintiff's claims in Count Two on this ground.

### 3. Damages are Not Available for Constitutional Claims

■ Defendants assert that although there has been no definitive decision by the Third Circuit or the district courts of the Commonwealth of Pennsylvania, only injunctive relief is available for any alleged violation of state constitutional provisions. Mot. of Def. Wissahickon School Dist. et al to Dismiss Pl.'s Third Amended Complaint at 33. Defendants cite no authority for this proposition and advance no arguments to support their position.[3] The Court will,

---

**3.** In support of this contention, the defendants cite two cases in which this issue was not reached and improperly cite one case that assumed that damages *were* available in constitutional claims. *Id.* Defendants improperly cite *Agresta v. Goode,* 797 F.Supp. 399 (E.D.Pa.1992) for the proposition that monetary damages are not available. The *Agresta* court held that the Political Subdivision Tort Claims Act immunized defendants. The court did not rule that monetary damages were unavailable under the Pennsylvania Constitu-

tion. In fact the section of the court's opinion defendants' cite in their brief states,

> [n]either party has briefed what would appear to be a substantial and complex issue of whether Pennsylvania recognizes a private right of action for money damages against government against government officials for violations of the Pennsylvania constitution. *Assuming arguendo,* that such an action would be cognizable in a Pennsylvania court ..."

*Agresta,* 797 F.Supp. at 409 (emphasis added).

therefore, not dismiss Count Two of plaintiff's Third Amended Complaint on this ground.

#### 4. Four–Part Test for Analyzing Pennsylvania Constitutional Claims

█ Defendants argue that the Court should dismiss Count Two because plaintiff has failed to "brief and analyze" four topics that the Pennsylvania Supreme Court has directed courts to consider when reviewing state constitutional claims: (1) the text of the Pennsylvania constitutional provision; (2) the history of the provision including Pennsylvania case law; (3) related case law from other states; and (4) the policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence. *Blum v. Merrell Dow Pharm., Inc.*, 534 Pa. 97, 626 A.2d 537, 541 (1993); *United Artists Theater Circuit v. City of Philadelphia*, 535 Pa. 370, 635 A.2d 612, 615 (1993); *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 895 (1991). Defendants argue that plaintiffs must "analyze and brief" these four factors at this stage of the litigation or face dismissal. Mot. of Def. Wissahickon School Dist. et al to Dismiss Pl.'s Third Amended Complaint at 34.

█ Defendants misunderstand the Pennsylvania Supreme Court rulings on this issue. *Edmunds* and *Blum* held that as a "general rule" litigants should "brief and analyze" the four factors the Court enunciated in those decisions. *Edmunds*, 586 A.2d at 895; *Blum*, 626 A.2d at 541. However, neither case held that these four factors amount to heightened pleading requirements and neither court ruled that parties must brief and analyze these issues at this stage of the litigation. In the absence of authority to support defendants position, the Court will not dismiss Count Two of Plaintiff's Third Amended Complaint on this ground.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint is denied.

An appropriate Order will issue.

#### *ORDER*

**AND NOW** on this 17th day of March, 2004, upon consideration of Motion of Wissahickon School District, Wissahickon School District Board of Directors and Stanley J. Durtan, Superintendent of Schools, to Dismiss Plaintiff's Third Amended Complaint, Plaintiff's Response Opposing Motion to Dismiss Third Amended Complaint, Defendants Reply to Plaintiff's Answer Opposing Motion to Dismiss Third Amended Complaint and Plaintiff's Sur Reply Opposing Motion to Dismiss Third Amended Complaint, **IT IS ORDERED** that Motion of Wissahickon School District, Wissahickon School District Board of Directors and Stanley J. Durtan, Superintendent of Schools, to Dismiss Plaintiff's Third Amended Complaint is **DENIED**.

Upon consideration of Wissahickon School District, Wissahickon School District Board of Directors and Stanley J. Durtan, Superintendent of Schools', Motion to Strike Pursuant to Fed.R.Civ.Proc. 12(f), Plaintiff's Answer Opposing Motion to Strike, and Plaintiff's Brief Opposing Motion to Strike, **IT IS FURTHER ORDERED** that Wissahickon School District, Wissahickon School District Board of Directors and Stanley J. Durtan, Superintendent of Schools', Motion to Strike Pursuant to Fed. R. Civ. Proc. 12(f) is **DENIED WITHOUT PREJUDICE.** The parties shall attempt to resolve the issues raised in the Motion to Strike. Any unresolved issues will be addressed at a scheduling

conference which will be conducted in due course.