**R.H.S., Appellant**

v.

**ALLEGHENY COUNTY DEPARTMENT OF HUMAN SERVICES, OFFICE OF MENTAL HEALTH and Peter J. Tarasi.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 31, 2007.

Decided Nov. 15, 2007.

Reargument or Rehearing Denied En Banc Jan. 8, 2008.

R.H.S., appellant, pro se.

Paul J. Atencio, Pittsburgh, for appellees.

BEFORE: SMITH–RIBNER and SIMPSON, JJ., and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

Representing herself, R.H.S. (Plaintiff) appeals an order of the Allegheny County Common Pleas Court (trial court) sustaining the preliminary objections of the Allegheny County Department of Human Services, Office of Mental Health, and its employee Peter J. Tarasi, (collectively, Defendants) and dismissing her complaint with prejudice. In a 161–paragraph, eight-count complaint, Plaintiff sets forth numerous causes of action including intentional torts, negligence and constitutional violations resulting from Defendants' submission of an "Act 77 Historical" data form (Act 77 form) to the Pennsylvania State Police (PSP). Defendants were statutorily required to submit the form due to Plaintiff's involuntary commitment to a mental health facility. For the following reasons, we affirm.

In an October 3, 2005, amended complaint, Plaintiff sets forth lengthy allegations pertaining to her involuntary commitment to Lakewood Psychiatric Hospital (Lakewood). Briefly stated, Plaintiff presented herself to Allegheny General Hospital (AGH) with complaints of severe back pain. When physicians at AGH declined to admit Plaintiff for treatment, she "sarcastically" commented she would cut the pain out of her back with a knife. Amended Compl. ¶ 23. As a result of her comment, and pursuant to Section 302 of the Mental Health Procedures Act (MHPA),[1] AGH obtained a warrant for an emergency mental health examination of Plaintiff and, if necessary, her transfer to a mental health facility for treatment. AGH subsequently transferred Plaintiff to Lakewood where she remained for two days.

In her complaint, Plaintiff alleges numerous deficiencies in the procedure whereby she was committed to Lakewood. More specifically, she claims: AGH failed to conduct a mental health examination

---

1. Act of July 9, 1976, P.L. 817, *as amended,* 50 P.S. § 7302. This section generally provides that an emergency mental examination of a patient may be undertaken where a physician certifies an examination is needed or an authorized county administrator approves a warrant for examination. A patient must be examined within two hours after arrival at a treatment facility. If the examination reveals the patient needs treatment, it must begin immediately. If treatment is not necessary, the patient must be discharged. In any event, the patient must be discharged within 120 hours unless it is determined further treatment is necessary or the patient voluntarily seeks additional treatment.

prior to her commitment at Lakewood; AGH did not obtain a written application for a warrant to commit; and, Lakewood failed to conduct a mental health examination within two hours of her commitment. She also avers the hospitals failed to disclose her patient rights. As a result, Plaintiff alleges, the hospitals illegally committed her.

The instant case, however, concerns events arising many years *after* Plaintiff's involuntary commitment. Plaintiff alleges that in 2002, Defendants, through Tarasi, submitted an Act 77 form to the PSP revealing Plaintiff's commitment to a mental health facility.[2] A completed form requires the patient's name, date of birth, gender, and social security number. The form also indicates the type of commitment under the MHPA, the commitment date, the place of commitment, and the examining physician's name. Tarasi completed the Act 77 form based on AGH's Application for Involuntary Examination and Treatment (Application), which included the emergency warrant.

In her complaint, Plaintiff alleges Tarasi provided false information to the PSP when he submitted the Act 77 form. Citing irregularities in the Application, Plaintiff asserts Tarasi should have investigated the circumstances surrounding her commitment before submitting the Act 77 form. Had Tarasi done so, Plaintiff asserts, he would have discovered her involuntary commitment violated the MHPA. She further asserts Tarasi falsely reported the place of commitment as AGH when she was in fact committed to Lakewood. As result of the false form submitted to the PSP, Plaintiff is denied the right to bear arms. Importantly, the complaint does not allege Plaintiff applied for and was denied a firearm permit by the PSP because of her mental health record.

Plaintiff's complaint sets forth eight causes of action: libel (Count I); negligence (Count II); intentional infliction of emotional distress (Count III); a Fourteenth Amendment due process violation (Count IV);[3] and, violations of the Pennsylvania Constitution, specifically Article 1, § 1 (relating to inherent rights of mankind), § 7 (relating to freedom of press and speech; libels), § 8 (relating to security from searches and searches) and § 21 (relating to right to bear arms) (respectively Counts V–VIII).[4]

Plaintiff seeks monetary relief for the alleged intentional torts, negligence and constitutional violations. In addition, Plaintiff requests an order barring Defendants from submitting her name to other state agencies that are entitled to receive notification of her mental health record. Significantly, Plaintiff also seeks expunc-

---

**2.** Sections 109(d) of the MHPA and 6111.1(f) of the Pennsylvania Uniform Firearms Act of 1995 (Firearms Act) place an affirmative duty on certain individuals to notify the PSP of persons adjudicated incompetent or involuntarily committed to a mental health facility. 50 P.S. § 7109(d); 18 Pa.C.S. § 6111.1(f).

**3.** The Fourteenth Amendment, U.S. CONST., amend. XIV, provides in pertinent part:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of

law; nor deny to any person within its jurisdiction the equal protection of the laws.

**4.** Plaintiff's right to bear arms is restricted by Section 6105(c)(4) of the Firearms Act, 18 Pa.C.S. § 6105(c)(4). This section generally provides that an individual who has been involuntarily committed to a mental health facility for inpatient care and treatment under 50 P.S. § 7302 may not possess firearms where an examining physician certifies such care was necessary or that the person was committable.

tion of her mental health record with the PSP. She further requests a declaration that Sections 6105(c)(4) and 6111.1 of the Firearms Act, 18 Pa.C.S. §§ 6105(c)(4) and 6111.1, are unconstitutional because they create a mental health record, which denies an individual the right to bear arms without due process of law.

Defendants filed preliminary objections asserting immunity under Section 114(b) of the MHPA,[5] and the statute commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541–42. Defendants also objected to the complaint pursuant to Pa. R.C.P. Nos. 1028(a)(6) (pendency of a prior action) and 1028(a)(2) (failure to conform to a rule of law or rule of court).[6]

In turn, Plaintiff filed a preliminary objection to Defendants' objections. She argued Defendants may not assert immunity by way of preliminary objection but must raise it as a defense in new matter.

The trial court sustained Defendants' preliminary objections to Plaintiff's intentional tort and negligence claims concluding Defendants are entitled to immunity

under the Tort Claims Act. However, the court overruled Defendants' objection to Plaintiff's constitutional challenges. The court explained that dismissal of Plaintiff's constitutional claims at the preliminary objection stage is premature due to uncertainty in Pennsylvania law as to whether a private right of action for money damages exists for violations of the state constitution. The trial court also overruled Plaintiff's preliminary objection.

Both parties sought reconsideration, which the trial court granted. Plaintiff argued Defendants were not entitled to immunity under the Tort Claims Act. She maintained Defendants' conduct is criminal insofar as Tarasi submitted a false Act 77 form to the PSP in violation of 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities) and § 4906(a) (relating to false reports to law enforcement authorities). The court rejected Plaintiff's argument, noting her complaint failed to aver Tarasi committed any criminal conduct with the intent to mislead a public servant in the performance of his duties or with the intent to implicate another.

---

5. Section 114(b) of the MHPA, 50 P.S. § 7114(b), provides:

A judge or a mental health review officer shall not be civilly or criminally liable for any actions taken or decisions made by him pursuant to the authority conferred by this act.

6. In their preliminary objections, Defendants averred that Plaintiff commenced an action against Defendant Allegheny County in federal court asserting violations of the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution actionable pursuant to 42 U.S.C. §§ 1983 and 1985. Reproduced Record (R.R.) at 221–22. The federal action also included allegations of negligence, negligence per se, gross negligence, intentional infliction of emotional distress, breach of fiduciary duty, assault, battery, false arrest, false imprisonment, malicious use of process, and violations of the Pennsylvania Constitution and the MHPA. Id. at 222. The federal court dismissed Plaintiff's federal claims and trans-

ferred the remaining state claims to the trial court. Id. at 223, 230. In overruling this preliminary objection, the trial court observed that at the time of Plaintiff's federal complaint, Tarasi had not submitted the Act 77 form to the PSP. Trial Ct. Op. at 6. Therefore, the actions at issue here could not be included in the federal complaint. Furthermore, at the time of Defendants' preliminary objections, the court had dismissed Plaintiff's state constitutional claims. As such, there were no prior pending claims. We note Plaintiff appealed the trial court's order to the Superior Court. See [R.H.S]. v. Allegheny Gen. Hosp., et al., (Pa.Super., No. 515 WDA 2007).

Defendants also averred Plaintiff failed to notify the Attorney General of her constitutional challenges in accord with Pa. R.C.P. No. 235. The trial court dismissed this objection after Plaintiff supplied proof of notification. Trial Ct. Op. at 6.

Conversely, the trial court granted Defendants' reconsideration motion. In doing so, the court acknowledged that Section 109(d) of the MHPA places an affirmative duty on Defendants to notify the PSP of any individual involuntarily committed to a mental health facility pursuant to Section 302 of the MHPA. Under these circumstances, the trial court reasoned, Defendants could not be liable under the United States or Pennsylvania Constitutions.

On appeal, Plaintiff raises the following issues:

1. Whether the trial court failed to accept as true all well-pled material allegations of her complaint, as well as inferences fairly deducible from the allegations.

2. Whether the trial court considered matters outside the record to dismiss the complaint.

3. Whether Defendants waived an immunity defense by failing to plead it as new matter.

4. Whether the Tort Claims Act or MHPA grants Defendants immunity for constitutional violations.

5. Whether the Tort Claims Act grants Defendants immunity where Tarasi submitted a false report to the PSP.

6. Whether the trial court was required to review the evidence giving rise to Plaintiff's commitment.

7. Whether Plaintiff can challenge the constitutionality of Sections 6105(c)(4) and 6111.1 of the Firearms Act.

 On an appeal from a trial court's order sustaining preliminary objections and dismissing the complaint, we review whether the trial court committed an error of law or an abuse of discretion. *Sassu v. Borough of W. Conshohocken*, 929 A.2d 258 (Pa.Cmwlth.2007). We accept all well-pled facts in the complaint as true, as well as any reasonable inferences deducible from those facts. *Id.* Preliminary objections in the nature of a demurrer should be sustained only where the pleadings are clearly insufficient to establish a right to relief; any doubt must be resolved in favor of overruling the demurrer. *Id.*

**A. Trial Court's Standard of Review**

Plaintiff first asserts the trial court erred by failing to accept all well-pled material allegations of her complaint as true, as well as reasonable inferences. Reviewing her complaint, Plaintiff asserts she sufficiently pled the following relevant facts: (1) physicians at AGH failed to perform a mental health examination of her; (2) without such an examination, AGH could not obtain a warrant to commit; and, (3) without an examination and resulting physician's certification, Tarasi had no obligation to submit an Act 77 form to the PSP. *See* 18 Pa.C.S. § 6105(c)(4). This, according to Plaintiff, rendered Tarasi's Act 77 form false.

Plaintiff's allegations, accepted as true, are nevertheless belied by the Application attached to her complaint as Exhibit D. Specifically, page 7 of the Application is the "Physician's Examination," completed by an AGH physician. Plaintiff concedes Tarasi completed the Act 77 form using information obtained from the Application. Pl.'s Br. at 32. Despite Plaintiff's allegations otherwise, Tarasi possessed the required physician's certification under 18 Pa.C.S. § 6105(c)(4). *See generally Diess v. Pa. Dept of Transp.*, 935 A.2d 895, 2007 WL 2669375 (Pa.Cmwlth.2007) (courts reviewing preliminary objections may consider not only the facts pleaded in the complaint, but also documents or exhibits attached to it).

 The remainder of Plaintiff's argument focuses on her belief Tarasi had an independent duty to investigate the cir-

cumstances of her commitment due to inconsistencies in the Application. However, as the trial court observed, the MHPA places no such duty on mental health officials. Regarding reporting of commitments under Section 302, Section 109(d) the MHPA requires:

> mental health review officers and county mental health and mental retardation administrators [to] notify the [PSP] on a form developed by the [PSP] of the identity of any individual who has been adjudicated incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment under this act or who has been involuntarily treated as described under 18 Pa.C.S. § 6105(c)(4). . . .

50 P.S. § 7109(d). Since Tarasi attached the physician's certification to the Act 77 form, Plaintiff's claim fails. *See* 37 Pa. Code § 33.120 (identifying documents to be attached to Act 77 form). Thus, we discern no merit in Plaintiff's contention the trial court failed to accept as true all well-pled material facts.[7]

### B. Trial Court's Scope of Review

Plaintiff further asserts the trial court impermissibly considered matters outside the record to dismiss her complaint. More particularly, the trial court acknowledged Plaintiff sought damages for wrongful involuntary commitment against Defendant Allegheny County and other named defendants in another proceeding before the court.

Initially, we observe Plaintiff's other case was properly brought to the trial court's attention on preliminary objections as a pending prior action. Pa.R.C.P. No. 1028(a)(6); Original Record Item 8; *See Sch. Dist. of Phila. v. Livingston–Rosenwinkel,* 690 A.2d 1321 (Pa.Cmwlth.1997). Rejecting this argument, the trial court nevertheless dismissed Plaintiff's tort and negligence claims because these actions did not fall within any exception to government immunity under the Tort Claims Act. The court later dismissed Plaintiff's state constitutional claims, concluding Defendants could not be held liable for violations of Plaintiff's rights because their action, submitting the Act 77 form, is statutorily required. The trial court's reference to Plaintiff's prior lawsuit did not provide the basis for its ruling on preliminary objections. As such, no basis for reversal is apparent.

### C. Immunity Issues

Next, we consider Plaintiff's third, fourth and fifth issues on appeal. In her third issue, Plaintiff asserts Defendants' failure to raise immunity by way of new matter resulted in waiver of the defense. In her fourth and fifth issues, Plaintiff questions whether the Tort Claims Act or the MHPA grants Defendants immunity for violations of the U.S. and Pennsylvania Constitutions and, whether the Tort Claims Act grants Tarasi immunity for submitting a false report to the PSP.

#### 1. Relief Unavailable

At the outset, we note that Plaintiff is not entitled to most of the relief she seeks. Thus, Plaintiff may not recover money

---

7. We find no reversible error in the incorrect identification of the place of Plaintiff's commitment, and we therefore reject Plaintiff's argument on this issue. Tarasi's identification of AGH rather than Lakewood as the place of commitment is harmless in the absence of any prejudice flowing from this identification. Further, any error is a minor, clerical one, given that Plaintiff was admitted to a mental health facility based on an application made by AGH after examination by one of its physicians. *See* Amended Compl. at Exhibits D and E. *Cf. Antonis v. Liberati,* 821 A.2d 666 (Pa.Cmwlth.2003) (public official not liable for clerical errors in indexing a judgment note).

damages for Defendants' alleged violation of her state constitutional rights, and the trial court may not order the PSP to expunge her mental health record under the Firearms Act.

### a.

■ Regarding Plaintiff's claim for money damages, "neither statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." *Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa.Cmwlth.), *appeal denied*, 589 Pa. 741, 909 A.2d 1291 (2006) (declining to recognize cause of action for money damages for alleged violations of Article 1, § 8, relating to search and seizure); *see Robbins v. Cumberland County Children & Youth Servs.*, 802 A.2d 1239 (Pa.Cmwlth.2002) (acknowledging lack of case law recognizing a cause of action for money damages for alleged violations of Article 1, § 1, relating to the right to inherent rights of mankind). Moreover, Plaintiff does not argue Pennsylvania law recognizes a private right of action for money damages.

### b.

■ In addition, Plaintiff is not entitled to expunction of her mental health record with the PSP. *See* Amended Compl. ¶¶ 73, 83, 92, 103, 112, 120, 128, 141. Pursuant to 18 Pa.C.S. § 6111.1, the PSP is charged with administering the Firearms Act. As such, it is responsible for maintaining records submitted pursuant to the Act including mental health records under the MHPA. The PSP, therefore, maintains the mental health record of which Plaintiff complains. Any injunctive relief ordering expunction of her mental health record requires the PSP to act. In turn, the PSP's duty to expunge a mental health record is dependent on a judicial determination either vacating an involuntary commitment order or concluding sufficient evidence did not support it. 18 Pa.C.S. § 6111.1(g). Here, the legality of Plaintiff's commitment is not at issue, and Plaintiff fails to allege that a judicial order nullifying her commitment exists. Without a judicial order, the PSP is without authority to expunge a mental health record.

■ Also, the PSP is an indispensable party as to this particular claim for injunctive relief. [T]he failure to join an indispensable party to a lawsuit deprives the court of subject matter jurisdiction. *Polydyne, Inc. v. City of Phila.*, 795 A.2d 495, 496 (Pa.Cmwlth.2002). Whether a court lacks jurisdiction due to the failure to join an indispensable party may be raised at any time or by the Court on its own motion. *Id.* A party is deemed indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. *Id.* (citations omitted.)

Any declaration of rights or other relief related to expunction of Plaintiff's mental health record must include the agency specifically charged with administration of the records chapter of the Firearms Act, the PSP. *See* 18 Pa.C.S. § 6111.1. Failure to join this indispensable party is fatal to Plaintiff's claim for relief concerning expunction of her mental health record under the Firearms Act. *See, e.g., Mains v. Fulton*, 423 Pa. 520, 224 A.2d 195 (1966).

### c.

■ Furthermore, Counts VI and VII of Plaintiff's complaint also fail. These counts allege a deprivation of Plaintiff's right to free speech and to be free from unreasonable searches and seizures. PA. CONST. art. 1 §§ 7 and 8, respectively. Plaintiff's allegations, however, do not aver the alleged rights violation is a consequence of Defendants' compliance with its

statutory mandate to report her commitment to the PSP. Indeed, the causal connection between the mandated reporting in 2002 and the alleged violations, which seem to relate to Plaintiff's commitment years earlier, is unclear at best and certainly cannot be inferred. Without pleading causation, Plaintiff does not state a cause of action. *See generally Estate of Swift v. Ne. Hosp. of Phila.*, 456 Pa.Super. 330, 690 A.2d 719 (1997) (where a plaintiff fails to properly plead a cause of action, it is waived).

Notwithstanding our conclusions that Plaintiff cannot recover much of the relief sought and that Counts VI and VII fail, we must review the merits of Plaintiff's remaining claims because she seeks injunctive relief in the nature of an order barring Defendants from submitting her mental health record to other state agencies. We conclude Plaintiff failed to state any cognizable cause of action.

### 2. Immunity Prematurely Raised

■ Plaintiff first complains Defendants may not raise the issue of immunity by way of preliminary objection. "Immunity from suit is an affirmative defense that, under the Pennsylvania Rules of Civil Procedure, must be pled in a responsive pleading under the heading new matter, not as a preliminary objection." *Jacobs v. Merrymead Farm, Inc.*, 799 A.2d 980, 983 (Pa.Cmwlth.2002). An affirmative defense, by definition, raises new facts and arguments that, if true, defeat the plaintiff's claim, even if all the allegations contained in the complaint are true. *Id.* By requiring affirmative defenses to be raised as new matter, the rules provide predictability and orderly practice. *Id.*

■ Nevertheless, courts permit limited exception to the general rule and allow parties to plead the affirmative defense of immunity as a preliminary objection. *Id.*; *Tiedeman v. Phila.*, 732 A.2d 696 (Pa. Cmwlth.1999); *Chester Upland Sch. Dist. v. Yesavage*, 653 A.2d 1319 (Pa.Cmwlth. 1994). The affirmative defense must be clearly applicable on the face of the complaint. *Merrymead Farm, Inc.* Where the plaintiff does not object to the improper procedure, lower courts rule on the affirmative defense of immunity raised by preliminary objection. *Id.*

Here, Plaintiff filed a preliminary objection to Defendants' preliminary objection raising immunity. Nevertheless, it is apparent from the face of Plaintiff's complaint her causes of action for libel, negligence,[8] and intentional infliction of emotional distress fail. 42 Pa.C.S. § 8542; *Roskos v. Sugarloaf Twp.*, 295 F.Supp.2d 480 (M.D.Pa.2003). Similarly, Defendants' actions are immune from tort liability under the MHPA in the absence of alleged willful misconduct. *Allen v. Montgomery Hosp.*, 548 Pa. 299, 696 A.2d 1175 (1997) (mental health facility entitled to immunity under MHPA for claim of medical malpractice unless actions constituted gross negligence).

■ Plaintiff is technically correct that Defendants followed an improper procedure. But to amount to reversible error, the procedural defect must also cause harm. *See* Pa. R.C.P. No. 126 ("[t]he court at every stage of any such action or proceeding may disregard any error or

---

**8.** Negligent acts which may impose liability must involve one of the following: the control of a motor vehicle; the care, custody or control of personal property; the care, custody or control of real property; trees, traffic controls, and street lighting; utility service facilities; streets; sidewalks; and, the care, custody, or control of animals. 42 Pa.C.S. § 8542. The transmission of information is not listed within any exception to governmental immunity and cannot be fairly subsumed in the noted exceptions.

defect of procedure which does not affect the substantial rights of the parties."). However, Plaintiff fails to demonstrate how the timing of the immunity defense affects the ultimate conclusion that Defendants are immune from suit. So, for example, she does not suggest that further pleading will add new relevant facts. Absent a showing of prejudice, we discern no reversible error. *Id.*; *see Baravordeh v. Borough Council of Prospect Park*, 706 A.2d 362 (Pa.Cmwlth.1998).

### 3. Immunity from Claimed Constitutional Deprivations

Regarding Plaintiff's allegations of constitutional violations, the Tort Claims Act does not provide immunity. As the statute's name implies, the immunity granted covers only those torts sounding in negligence. As such, "[c]laims arising from violations of the Pennsylvania Constitution may still be raised against local governments." *Coffman v. Wilson Police Dep't*, 739 F.Supp. 257, 266 (E.D.Pa. 1990); *see Montanye v. Wissahickon Sch. Dist.*, 327 F.Supp.2d 510 (E.D.Pa.2004). In addition, at least one court declined to hold the MHPA provides immunity from alleged violations of civil rights. *Stock v. Forbes Health Sys.*, 697 F.Supp. 1399 (W.D.Pa.1988). Because blanket immunity does not exist for violations of constitutional rights, individual review of Plaintiff's remaining allegations is necessary. *See Dorsch by Dorsch v. Butler Area Sch. Dist.*, 105 Pa.Cmwlth. 519, 525 A.2d 17 (1987) (merits of immunity defense raised by preliminary objection must be analyzed against complaint averments).

#### a. Reputation

In Count V, Plaintiff alleges a deprivation of her rights to life, reputation and the pursuit of happiness under Article 1, § 1 of the Pennsylvania Constitution.

More specifically, she claims the Act 77 form injured her reputation resulting in the loss of her right to bear arms. Reputation is a fundamental right under the Pennsylvania Constitution, and as such, it is entitled to procedural due process. *P.J.S. v. Pa. State Ethics Comm'n*, 669 A.2d 1105 (Pa.Cmwlth.1996).

In *Wolfe v. Beal*, 477 Pa. 477, 384 A.2d 1187 (1978), the Supreme Court recognized an individual's right to reputation includes the right to have mental health records destroyed where a court finds the commitment null and void. In ordering the destruction of the plaintiff's mental health record, our Supreme Court stated:

> We cannot ignore the fact that many people in our society view mental illness with disdain and apprehension. We, in *Commonwealth ex rel. Magaziner v. Magaziner*, 434 Pa. 1, 253 A.2d 263 (1975 [1969]), approved of the concept of protecting the reputation of a person who was unlawfully thrust into the criminal process by sanctioning the expungement of his criminal record. We should not do less for [the plaintiff]. The continued existence of the hospital records [poses] a threat to [her] reputation.

> Additionally, the Commonwealth Court's contention that [the Mental Health and Mental Retardation Act, Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended*, 50 P.S. §§ 4101–4704] prohibits the destruction of [the plaintiff's] hospital records is erroneous. This section states that records must be kept on persons who are "admitted or committed to any facility ... under any provision of this act". Since it has been adjudicated [the plaintiff's] commitment is null and void, [she] was never "admitted or committed to any facility ... under any provision of this act".

*Id.* at 480–81, 384 A.2d at 1189.

Here, Plaintiff requests injunctive relief barring Defendants from listing her name

on state registries requiring notification of those involuntarily committed. However, as noted, the validity of Plaintiff's commitment is not at issue here. Rather, Plaintiff seeks damages allegedly resulting from reporting her commitment. There is no averment Plaintiff followed the statutory procedures to have her involuntary commitment declared null and void. Where the commitment remains lawful, no action for a violation of Pennsylvania Constitution Article 1, § 1 may be maintained.

### b. Right to Bear Arms

█ Plaintiff also claims in Count VIII Defendants' failure to investigate her commitment and resulting false report denied her the right to bear arms under PA. CONST. art. 1 § 21. Initially, we note, the right to bear arms is not unlimited; it may be restricted in the exercise of police power for the good order of society and protection of citizens. *Gardner v. Jenkins*, 116 Pa.Cmwlth. 107, 541 A.2d 406 (1988).

█ We conclude Plaintiff fails to state a cause of action for an alleged violation of her right to bear arms. In particular, Plaintiff fails to allege she applied for a firearm permit with the PSP and was denied same on account of her mental health record. Plaintiff admits she failed to apply for a permit in paragraph 136 of her complaint:

Plaintiff avers that Defendants violated [18 Pa.C.S. § 6111.1] for creating a mental health record with the [PSP] by submitting an Act 77 Historical Data Information sheet to the [PSP] when no physician conducted an involuntary emergency examination pursuant to the Warrant issued by Allegheny County and thus there could be no certification by an examining physician that inpatient care was necessary or that the person was committable. *Predicated on the above actions, Plaintiff was deprived of*

*her right to lawfully apply for a Pennsylvania weapon's permit with reasonable expectation that said permit would be granted.*

Amended Compl. at ¶ 136 (emphasis added).

█ "Standing is a core jurisprudential requirement that looks to the party bringing the legal challenge and asks whether that party has actually been aggrieved as a prerequisite before the court will consider the merits of the legal challenge itself." *Commonwealth ex rel. Judicial Conduct Bd. v. Griffin*, 591 Pa. 351, 360, 918 A.2d 87, 93 (2007). Here, although Plaintiff's complaint makes vague references to her inability to possess a firearm as a result of Defendants' conduct, there are no allegations the PSP denied her application for a firearm permit based on her mental health record.

Moreover, the Firearms Act provides a special procedure for someone wishing to challenge the denial of a permit based on a mental health record. 18 Pa.C.S. § 6111.1(e) (challenge to records). If the challenge to the PSP is denied, an appeal may be taken to the Attorney General, and then to this Court, not to the trial court. *Id.* Plaintiff does not aver that she exhausted these administrative remedies for denial of a license. The failure to make such averments supports our conclusion that Plaintiff lacks standing to advance this claim.

### c. Due Process

In Count IV, Plaintiff alleges Defendants violated her right to due process under the Fourteenth Amendment by failing to investigate her commitment to Lakewood, which in turn, resulted in a false Act 77 form submitted to the PSP.

As previously noted, Defendants are not required to investigate the circumstances surrounding an individual's commitment to

a mental health facility prior to submitting an Act 77 form. It would be especially difficult here where Tarasi submitted the Act 77 form many years after Plaintiff's commitment to Lakewood. In addition, Tarasi's submission of the Act 77 form, without more, does not violate due process. *See Seville v. Martinez,* 130 Fed. App'x 549 (3d Cir.2005) (due process claim fails because inmate failed to allege deprivation of constitutionally protected interest resulting from fraudulent prisoner misconduct report). As explained above, Plaintiff cannot sustain a cause of action for either a violation of her right to reputation or the right to bear arms. Without any constitutionally protected interest, Plaintiff cannot maintain an action for a violation of due process. *Id.*

### 4. Immunity from Crimes and Willful Misconduct

■■■ Plaintiff also alleges Tarasi is not immune from suit under the Tort Claims Act where he filed a false report with the PSP. Section 8550 of the Tort Claims Act provides immunity does not apply where it is judicially determined that the act of the employee or agency causing the injury constituted a crime, actual fraud, actual malice or willful misconduct. 42 Pa.C.S. § 8550.

Plaintiff argues Tarasi's actions constituted crimes, namely, unsworn falsification to authorities and false reports to law enforcement authorities, 18 Pa.C.S. §§ 4904 and 4906, respectively. Her complaint, however, fails to identify Tarasi's conduct as criminal, nor do her allegations set forth the requisite elements of a criminal state of mind. More specifically, it is a crime *to provide knowingly false information with the intent to mislead* a public official in the performance of his duties. 18 Pa.C.S. § 4904. Similarly, it is a crime *to knowingly give false information to any law enforcement officer with the intent to im-*

*plicate* another. 18 Pa.C.S. § 4906. Here, even assuming Tarasi had a duty to investigate Plaintiff's commitment, Plaintiff failed to plead Tarasi acted with the intent to mislead the PSP or make false statements which he knew to be untrue or lacking authenticity. Plaintiff also failed to allege Tarasi acted to implicate her in a crime.

■■■ In addition, Plaintiff fails to allege sufficient facts establishing Tarasi's actions constituted willful misconduct. For purposes of Section 8550 of the Tort Claims Act, "willful misconduct" means "willful misconduct aforethought" and is synonymous with "intentional tort." *Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289 (1994); *Kuzel v. Krause,* 658 A.2d 856 (Pa.Cmwlth.1995). Willful misconduct means the actor "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Evans v. Phila. Transp. Co.,* 418 Pa. 567, 574, 212 A.2d 440, 443 (1965).

The averments here fail to allege Tarasi intended to cause injury to Plaintiff's reputation and well-being. Further, she does not allege Tarasi intended to bring about the complained-of actions or that he acted willfully, deliberately, maliciously, or with reckless indifference to Plaintiff's constitutional rights when fulfilling his statutory obligation to report Plaintiff's commitment.

Plaintiff fails to allege sufficient facts establishing Tarasi's actions constituted a crime or willful misconduct. Accordingly, Plaintiff's assertion that Tarasi is not immune from suit fails.

### D. Validity of Underlying Commitment

Plaintiff further contends the trial court was required to review the evidence giving rise to her commitment under Section 302 of the MHPA. Specifically, Plaintiff relies

on 18 Pa.C.S. § 6111.1(g)(2), a provision of the Firearms Act which allows a person who was involuntarily committed to a mental health facility under the MHPA to petition a court to determine the sufficiency of the evidence upon which the commitment was based.

Plaintiff's reliance on this Section, however, is misplaced. As repeatedly stated above, this action does not concern the propriety of Plaintiff's commitment to Lakewood, which, according to the trial court, is the subject of a separate suit. Rather, this case seeks damages and other relief from harms allegedly caused by Defendants' statutorily mandated duty to report Plaintiff's commitment to the PSP. Plaintiff's reliance on Section 18 Pa.C.S. § 6111.1(g)(2) is merely an attempt to collaterally attack her commitment to Lakewood.

### E. Constitutionality of Firearms Act

In her final issue, Plaintiff challenges the constitutionality of 18 Pa.C.S. §§ 6105(c)(4) and 6111.1 (respectively relating to persons not entitled to possess firearms and notification of mental health records), on the ground they create a mental health record without notice and opportunity to be heard. We conclude Plaintiff lacks standing to challenge the constitutionality of the statute.

First, we observe that 18 Pa.C.S. § 6105 does not create a mental health record; rather, it creates a legal disability on certain persons, including those involuntarily committed under the MHPA for whom an examining physician has issued a certification that inpatient care is necessary or that the person was committable.

Second, we observe that 18 Pa.C.S. § 6111.1 requires notification to the PSP of involuntary commitment. However, that section also provides two remedies: the right to challenge a denial of a firearm license and appeal to the Attorney General and then to the Commonwealth Court, 18 Pa.C.S. § 6111.1(e); and, the right to petition a court to review the sufficiency of the underlying commitment, 18 Pa.C.S. § 6111.1(g)(2). Plaintiff's constitutional challenge based on lack of notice and opportunity to be heard must be considered in light of these administrative procedures.

We recently explained in *Stilp v. Commonwealth*, 927 A.2d 707 (Pa.Cmwlth. 2007), that prior to judicial resolution of a dispute, an individual must as a threshold show that he has standing to bring the action. "The traditional concept of standing focuses on the idea that a person who is not adversely impacted by the matter he seeks to challenge does not have standing to proceed with the court system's resolution process." *Id.* at 710. A person who has not been adversely affected by the matter he seeks to challenge is not "aggrieved," that is, he does not have a discernible interest other than the abstract interest of all citizens in having others comply with the law. Also, the individual's interest must be direct, meaning the individual claiming to be aggrieved must show causation of harm to his interest by the matter in which he complains. *Id.* Further, the interest must be immediate and not a remote consequence of the judgment. *Id.*

Here, Plaintiff does not contend the PSP denied her the right to bear arms on account of the Act 77 form. Also, she does not aver that she was denied the administrative remedies set forth in 18 Pa.C.S. § 6111.1, discussed above. Thus, she lacks standing to challenge the constitutionality of certain provisions of the Firearms Act, 18 Pa.C.S. §§ 6105(c)(4) and 6111.1.

### F. Summary

For the reasons stated above, Plaintiff's complaint fails to state a cause of action

for which relief may be granted. Accordingly, we affirm the trial court's order dismissing Plaintiff's complaint.

### *ORDER*

AND NOW, this 15th day of November, 2007, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED.**