# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Key, : 
                Petitioner : 
  : No. 62 M.D. 2022
         v. : 
  : Submitted: December 8, 2025
Pennsylvania Department of : 
Corrections, : 
                Respondent : 


BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE MATTHEW S. WOLF, Judge


## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                     **FILED: January 21, 2026**

Petitioner Brandon Key (Petitioner), who is currently incarcerated within our Commonwealth's prison system, has filed a two-count original jurisdiction petition for review (PFR), through which he challenges certain aspects of Respondent Pennsylvania Department of Corrections' (Respondent) mail handling procedures and seeks a declaratory judgment declaring those procedures to be unlawful. Petitioner and Respondent have now filed cross-applications for summary relief, through which, respectively, Petitioner seeks partial judgment in his favor (regarding Count II of his PFR), and Respondent requests judgment in its favor as to both of the PFR's counts. Upon review, we deny both cross-applications.

# I. BACKGROUND[1]

Generally speaking, Respondent's treatment of inmate correspondence is governed via administrative regulation, which has been codified as 37 Pa. Code § 93.2.[2] Therein, Respondent has articulated rules regarding the handling of

---

[1] We draw the substance of this section from the PFR and Respondent's Answer with New Matter, as well as from the opinions we issued in 2023 and 2025, through which we respectively overruled Respondent's preliminary objections to the PFR and denied Respondent's "Application for Summary Relief in the Form of a Motion for Judgment on the Pleadings" (MJP). *See generally* PFR; *Key v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 62 M.D. 2022, filed May 8, 2023), 2023 WL 3295859 (*Key I*); *Key v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 62 M.D. 2022, filed Mar. 5, 2025), 2025 WL 707297 (*Key II*). For a more detailed articulation of the facts that gave rise to this action, we direct interested readers' attention to our *Key I* and *Key II* opinions.

[2] This administrative regulation states, in relevant part:

(a) Permitted correspondence. Inmates are permitted to correspond with friends, family members, attorneys, news media, legitimate business contacts and public officials. There may be no limit to the number of correspondents.

(b) Restrictions. The following restrictions apply:

(1) Correspondence with inmates of other facilities, former inmates, probationers or victims of the criminal acts of the inmate will not be permitted except upon approval of the facility manager or a designee.

(2) Correspondence containing threatening, obscene or explicit sexual material, or nudity as well as correspondence containing criminal solicitation or furthering a criminal plan or institution misconduct is prohibited.

(3) An inmate shall refrain from writing to persons who have stated in writing that they do not wish to receive mail from the inmate. This will not be interpreted to restrict the right of inmates to correspond with public officials with respect to the official duties of the latter.

(4) Correspondence with prohibited parties through a third party is also prohibited.

(5) Mail addressed to an inmate organization will not be accepted unless the facility manager and [Respondent's] Secretary have approved the organization and it is addressed to the staff coordinator of the organization.

. . . .

"incoming letters, photographs, etc., sent to inmates from outside the . . . facilities [in which the inmates are incarcerated]."  PFR, ¶4; *see* 37 Pa. Code § 93.2.  Respondent has also distilled its interpretation of this regulation into a policy

---

(f) Rejection of correspondence.  An item of correspondence which appears to violate subsection (b) may be rejected by facility mailroom staff.  The inmate and the sender, in cases when the inmate is not the sender, will be notified when the letter is rejected.  The letter will be held for at least 7 business days after mailing of the notification to permit reasonable opportunity to protest the decision.  If the letter is rejected, it will be returned to the sender.

(g) Incoming publications.

. . . .

(2) Publications shall be received directly from a publisher, bookstore, book club, distributor or department store.  Newspapers shall be mailed directly from the publisher.

(3) Publications may not be received by an inmate if they:

(i) Contain information regarding the manufacture of explosives, incendiaries, weapons, escape devices, poisons, drugs or intoxicating beverages or other contraband.

(ii) Advocate, assist or are evidence of criminal activity, inmate misconduct, violence, insurrection or guerrilla warfare against the government.

(iii) Threaten the security of a facility.

(iv) Contain nudity, obscene material or explicit sexual materials as defined in subsection (i).

(v) Constitute a bulk mailing specifically intended for the purpose of advertising or selling merchandise.

. . . .

(5) A publication will not be prohibited solely on the basis that the publication is critical of penal institutions in general, of a particular facility, staff member, or official of [Respondent], or of a correctional or penological practice in this or any other jurisdiction.

. . . .

(8) Covers of hardbound publications may be damaged or removed during inspection in the discretion of mailroom staff.

. . . .

37 Pa. Code § 93.2(a)-(b), (f), (g)(2)-(3), (5), and (8).

statement, DC-ADM 803.[3]  In 2018, Respondent amended DC-ADM 803 to add language declaring that inmates are barred from receiving original photographs through the mail but will instead be provided with copies of any such materials.  This was done as part of a broader change to Respondent's mail handling process, whereby all non-privileged incoming inmate mail is diverted before delivery to Smart Communications, a third-party vendor, which then forwards copies of the original materials to the intended recipient.  Currently, DC-ADM 803 does not address whether those copies must contain a certain image quality or show true fidelity to the original.

Petitioner takes issue with two aspects of Respondent's handling of his mail, specifically Respondent's treatment of incoming photographs and the adequacy of the notice provided by Respondent to affected inmates when incoming mail has been rejected.  With regard to the former, Petitioner avers that Respondent has been providing him with "overly darkened" copies of incoming mail since 2018.  PFR, ¶17.  Petitioner claims that these copies are often so dark that the details of the images they contain are not visible.  Accordingly, he asserts in Count I of his PFR that Respondent's policy of providing inmates with poor quality photograph copies constitutes an absurd and unreasonable interpretation of 37 Pa. Code § 93.2.  As for the latter, Petitioner maintains that Respondent has repeatedly rejected incoming mail without giving him adequate notice or an opportunity to challenge the rejection.  On that basis, he maintains in Count II that Respondent's failure to institute a proper

---

[3] DEP'T OF CORR., DC-ADM 803 (2020), https://pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/803%20Inmate%20Mail%20and%20Incoming%20Publications.pdf (last visited Jan. 20, 2025).

4

notice and challenge policy violates its administrative regulations, Pennsylvania law, and the Fourteenth Amendment's Due Process Clause.[4]

Respondent initially challenged the PFR via preliminary objections. We overruled those preliminary objections through *Key I* in May 2023 and directed Respondent to answer the PFR. Respondent complied with our directive by submitting an Answer and New Matter. Subsequently, Respondent filed its MJP, which we denied through *Key II* in March 2025. Thereafter, the parties filed their cross-applications for summary relief, which are now ripe for disposition.

## II. DISCUSSION

Each party argues that they are entitled to summary relief at this stage of the proceedings and opposes their opponent's request for judgment in their favor.[5] Respondent maintains that we must award it summary relief regarding Count I, because that claim is allegedly barred by the applicable statute of limitations. In addition, Respondent seeks summary relief for Count II, through two related assertions: first, the handling of rejected incoming inmate mail is governed by DC-ADM 803, as well as by Respondent's Unacceptable Correspondence Form (through which Respondent notifies inmates about mail rejections), not 37 Pa. Code § 93.2; and, second, the Unacceptable Correspondence Form complies with the mail rejection notice requirements imposed by the United States Court of Appeals for the

---

[4] U.S. CONST. amend. XIV § 1.

[5] Pennsylvania Rule of Appellate Procedure 1532(b) provides that "[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). "An application for summary relief is properly evaluated according to the standards for summary judgment." *McGarry v. Pa. Bd. of Prob. & Parole*, 819 A.2d 1211, 1214 n. 7 (Pa. Cmwlth. 2003). Accordingly, when considering an application for summary relief, we "must view the evidence in the light most favorable to the non-moving party and may enter judgment only if: (1) there are no genuine issues of material fact; and (2) the right to relief is clear as a matter of law." *Nw. Youth Servs., Inc. v. Dep't of Pub. Welfare*, 1 A.3d 988, 990 n.1 (Pa. Cmwlth. 2010).

5

Third Circuit through *Vogt v. Wetzel*, 8 F.4th 182 (3d. Cir. 2021).[6] Respondent's Br. at 10-21. By contrast, Petitioner asserts that we must grant him summary relief regarding Count II, because Respondent has allegedly (a) abandoned its argument that Count II is moot and (b) waived its assertion that 37 Pa. Code § 93.2 does not govern the handling of incoming inmate mail by failing to raise that argument as an affirmative defense in its Answer and New Matter. Petitioner's Br. at 10-13.

Respondent's position regarding Count I is based upon three contentions. First, the applicable statute of limitations for the declaratory judgment claim contained in Count I is two years, as Petitioner maintains that Respondent damaged his personal property (*i.e.*, the photos) and property claims of that type are subject to a two-year statute of limitations. Respondent's Br. at 18 (citing 42 Pa.C.S. § 5524). Second, Petitioner did not file his PFR within two years of becoming aware of the fact that Respondent was allegedly damaging the photos. *Id.* at 19-21. Finally, the statute of limitations was not tolled because Petitioner was not required to exhaust his administrative remedies prior to filing a declaratory judgment action. *Id.* at 18-19.

None of these assertions stand up to scrutiny, however. Generally speaking, declaratory judgment actions are governed by a four-year statute of limitations. *Konidaris v. Portnoff L. Assocs., Ltd.*, 884 A.2d 348, 354 (Pa. Cmwlth. 2005), *rev'd in part on other grounds*, 953 A.2d 1231 (Pa. 2008); *but see Glendon Civic Ass'n v. Borough of Glendon*, 572 A.2d 852, 854-55 (Pa. Cmwlth. 1990) (declaratory judgment action that sought determination that ordinance authorizing

---

[6] In *Vogt*, the Third Circuit held "that prisons must provide minimal procedural safeguards when they censor or withhold delivery of a particular letter." *Romig v. Wetzel*, 309 A.3d 1108, 1115 (Pa. Cmwlth.), *aff'd*, 326 A.3d 849 (Pa. 2024), *cert. denied sub nom. Romig v. Harry*, 145 S. Ct. 1969 (2025).

construction and operation of a solid-waste-to-electric generating facility and recycling center was collateral attack upon the ordinance that was time-barred by Pennsylvania Municipalities Planning Code's 30-day appeal limitation). Respondent does not assert that Petitioner failed to file his action within the applicable four-year period. Furthermore, even assuming *arguendo* that the two-year statute of limitations controlled in this situation, it would not produce a different outcome. This is because Petitioner was required to exhaust his administrative remedies prior to filing this original jurisdiction action, as well as because that requirement tolled the statute of limitations until those remedies were, in fact, exhausted. *See Morgalo v. Gorniak*, 134 A.3d 1139, 1151 (Pa. Cmwlth. 2016); *Humphrey v. Dep't of Corr*., 939 A.2d 987, 993 (Pa. Cmwlth. 2007). The record reflects that Petitioner exhausted his administrative remedies on November 16, 2021. PFR, ¶¶11-17, Exs. I-J. Given this, as well as the fact that he filed the instant action in February 2022, the two-year statute of limitations upon which Respondent relies does not bar Count I of the PFR. Accordingly, Respondent cannot obtain summary relief regarding Count I.

As for Count II, we similarly conclude that Respondent is not entitled to summary relief in relation to that claim. We agree with Petitioner that Respondent has waived its argument that DC-ADM 803 and the Unacceptable Correspondence Form, rather than 37 Pa. Code § 93.2, govern the provision of notice regarding rejected inmate mail, due to its failure to raise that argument in its Answer and New Matter. "An affirmative defense, by definition, raises new facts and arguments that, if true, defeat the [petitioner's] claim, even if all the allegations contained in the [petition for review] are true." *R.H.S. v. Allegheny Cnty. Dep't of Hum. Servs., Off. of Mental Health*, 936 A.2d 1218, 1227 (Pa. Cmwlth. 2007); *see Hous. Auth. of City*

7

*of Pittsburgh v. Green*, 552 A.2d 748, 750 (Pa. Cmwlth. 1989) (affirmative defenses rest upon factual averments that are extrinsic to those made in the petition for review). In general, and with some limited exceptions that are not relevant to this situation, "affirmative defenses in Pennsylvania must be pleaded by a [respondent] by way of New Matter in a responsive pleading." *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1095 (Pa. 2012) (citing Pa.R.Civ.P. 1030(a)-(b)). A respondent waives any such defense that they do not plead in New Matter. *Sewickley Valley Hosp. v. Dep't of Pub. Welfare*, 550 A.2d 1351, 1354 (Pa. Cmwlth. 1988). Respondent's argument qualifies as an affirmative defense in this instance because it is predicated upon factual averments regarding DC-ADM 803 and the Unacceptable Correspondence Form that are extrinsic to those in the PFR. *See R.H.S.*, 936 A.2d at 1227. Indeed, while Respondent did make reference in New Matter to its adoption of the Form, at no point did it assert that 37 Pa. Code § 93.2 was inapplicable to the claim Petitioner raised in Count II. *See* New Matter, ¶¶37-53. Accordingly, Respondent has waived the sole argument upon which it predicated its request for summary relief as to Count II.

We are also unpersuaded by Petitioner's argument regarding his purported entitlement to summary relief regarding Count II, even after factoring in Respondent's aforementioned waiver, and assuming *arguendo* that Respondent has abandoned its assertion of mootness. This is because Respondent raised a litany of other defenses in New Matter (including immunity, *res judicata*, collateral estoppel, and the Prison Litigation Reform Act (PLRA))[7] that remain active and could at least theoretically lead to an ultimate determination in its favor. *See* New Matter, ¶¶39-

---

[7] Respondent does not clarify in New Matter whether this reference is to Pennsylvania's PLRA, its federal counterpart, or both. *See* New Matter, ¶43.

52.  Accordingly, we cannot grant summary relief in Petitioner's favor as to Count II.

### III. CONCLUSION

In accordance with the foregoing analysis, we deny the parties' cross-applications for summary relief.

_____
**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Key,                            :
             Petitioner    :
                                          :    No. 62 M.D. 2022
         v.                  :
                                          :
Pennsylvania Department of              :
Corrections,                            :
             Respondent    :

## O R D E R

AND NOW, this 21st day of January, 2026, it is hereby ORDERED that the parties' cross-applications for summary relief are DENIED.

 

 

**LORI A. DUMAS, Judge**